Nos. 14-1745; 14-1756

_____

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

## JOSEPH TRAVERS,

Plaintiff-Appellee/Cross-Appellant

v.

## FLIGHT SERVICES & SYSTEMS, INC.,

Defendant-Appellant/Cross-Appellee

_____

Appeal from the United States District Court
for the District of Massachusetts
Civil Action Case No. 11-10175
The Honorable Richard G. Stearns

_____

## OPENING BRIEF OF DEFENDANT-APPELLANT/CROSS-APPELLEE
## FLIGHT SERVICES & SYSTEMS, INC.

_____

Jeffrey M. Rosin (C.A.B. 39150)
Christopher M. Pardo (C.A.B. 1154495)
Attorneys for Defendant-Appellant
Flight Services & Systems, Inc.
Constangy, Brooks & Smith LLP
535 Boylston Street, Suite 902
Boston, MA 02116
(617) 849-7880

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Flight Services and Systems, Inc. ("FSS") is a wholly owned subsidiary of International Total Services, Inc., an Ohio corporation.  There is no publicly held corporation that owns more than 10% of FSS's stock.

# TABLE OF CONTENTS

**Page**

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD ............................1

JURISDICTIONAL STATEMENT ....................................................................2

ISSUES PRESENTED.........................................................................................3

STATEMENT OF THE CASE.............................................................................5

    I.     Facts Relevant To The Issues Submitted For Review ........................6

    II.    Relevant Procedural History ...............................................................16

SUMMARY OF THE ARGUMENT ..................................................................20

ARGUMENT .....................................................................................................22

    I.     Applicable Legal Standards ................................................................22

          A.    Standards of review for motions brought under Rules 50 and 59..............................................................................22

          B.    The "law of the case" doctrine...............................................22

          C.    Standard to prove retaliation..................................................23

    II.    The District Court's Excluding Travers' Hearsay Statements Attributed To C.E.O. Robert Weitzel Is Fatal To Travers' Claims..........................................................................23

    III.   No Reasonable Jury Could Have Found For Travers Based Upon The Remaining Trial Evidence ...................................26

          A.    Tip solicitation is a terminable offense at FSS. .....................27

          B.    Travers was directly accused by a passenger of tip solicitation..........................................................................27

i

# TABLE OF CONTENTS
## (continued)

Page

C.  Travers' written statement admits to tip solicitation, and all of his fellow skycaps agreed his words constituted tip solicitation...................................................................27

D.  FSS had more evidence of tip solicitation against Travers than against other employees terminated for tip solicitation, demonstrating no differential treatment in Travers' termination. ..........................................................29

    1.  This Court already evaluated the same comparator evidence that was presented at trial, and found that it did not create an inference of retaliation....................30

    2.  Collier's business judgment to terminate Travers should not be second guessed.........................................35

    3.  The additional "evidence" Travers introduced at trial cannot support an inference of retaliation either. ................................................................36

IV.  The District Court Erred In Awarding $270,000 In Back Pay And $50,000 In Emotional Distress ......................................41

A.  No back pay or emotional distress damages should have been awarded given Travers' admissions of wrongful conduct. ....................................................41

B.  Alternatively, if the Court assumes Travers told the truth in his FSS records, the evidence is insufficient to support the back pay award..................................................43

C.  The evidence was insufficient to support the remaining emotional distress award.........................................44

V.  The District Court Erred In Its Awards Of Attorneys' Fees And Costs ................................................................46

ii

# TABLE OF CONTENTS
## (continued)

Page

A.   Travers' counsel's misconduct during closing argument requires substantial reduction or complete denial of fees and costs. .................................................................................48

B.   Travers' counsel engaged in improper conduct regarding the testimony of Agba. ............................................................50

C.   Travers' counsel knowingly advanced inadmissible evidence at trial. ........................................................................54

D.   Travers should also have to bear his own fees and costs given his admitted fraud while employed by FSS. ..................55

CONCLUSION ...................................................................................56

# TABLE OF AUTHORITIES

**Page**

## CASES

Anderson v. Home Depot U.S.A., Inc., No. Civ.A. 02-11000-DPW,
2004 WL 42569 (D. Mass. Jan. 8, 2004)............................................35

Aponte-Rivera v. DHL Solutions USA, Inc., 650 F.3d 803 (1st Cir.
2011) ...................................................................................................45

Bio v. Fed. Express Corp., 424 F.3d 593 (7th Cir.2005)........................33

Blackie v. Maine, 75 F.3d 716 (1st Cir. 1996) .......................................26

Clinton v. Beverly Enters.–Mass., Inc., No. 964947, 1998 WL
1182244 (Mass. Super. Feb. 20, 1998)...............................................36

Crayton v. Valued Servs. of Ala., LLC, 737 F. Supp. 2d 1320 (M.D.
Ala. 2010) ...........................................................................................32

Culebras Enters. Corp. v. Rivera-Rios, 846 F.2d 94 (1st Cir. 1988)......46

DeRoche v. M.C.A.D., 848 N.E.2d 1197 (Mass. 2006) .........................45

Diorio v. East Boston Neighborhood Health Ctr., No. 08-P-866, 2009
WL 1608515 (Mass. App. Ct. June 10, 2009).....................................36

Exact Software v. Infocon Sys., Inc., No. 3:03CV7183, 2011 WL
2490594 (N.D. Ohio June 22, 2011)....................................................47

Franceschi v. Hosp. Gen. San Carlos, Inc., 420 F.3d 1 (1st Cir. 2005)..................46

Fresenius Med. Care Holdings, Inc. v. U.S., No. 13-2144, 2014 WL
3938648 (1st Cir. Aug. 13, 2014)........................................................22

Gargano and Assocs. v. M.C.A.D., No. 20044550, 2005 WL 3605388
(Mass. Super. Oct. 28, 2005) ..............................................................46

Gilster v. Primebank, No. 12-3064, 2014 WL 1356814 (8th Cir. Apr.
4, 2014) .......................................................................................... 49, 50

Gomez v. Rivera Rodriguez, 344 F.3d 103 (1st Cir. 2003)....................25

iv

# TABLE OF AUTHORITIES
## (continued)

**Page**

Goncalves v. Plymouth County Sheriff's Dept., 659 F.3d 101 (1st Cir. 2011) ........................................................................................ 35, 37

Hernandez v. City Wide Insul. of Madison, Inc., 508 F. Supp. 2d 682 (E.D. Wis. 2007) ...........................................................................33

Hill v. Herbert Roofing and Insulation, Inc., No.13-cv-11228, 2014 WL 1377587 (E.D. Mich. Apr. 8, 2014) .....................................29

Hodge v. Am. Home Assur. Co., 25 F.3d 1037 (1st Cir. 1994) .............53

Horn v. U.P.S., Inc., 433 Fed. App'x 788 (11th Cir. 2011) ...................37

Hubert v. Consolid. Med. Labs., 716 N.E.2d 329 (Ill. App. Ct. 1999) ..................42

In re Goldstein, 430 F.3d 106 (2d Cir. 2005) ........................................47

In re Whitman, 51 B.R. 502 (D. Mass. 1985) ........................................46

Irany v. Salem State College, No. 07-P-376, 2008 WL 222270 (Mass. App. Ct. Jan. 28, 2008) ......................................................................37

Jenkins v. Wal-Mart Stores, Inc., 956 F. Supp. 695 (W.D. La. 1997) ..................55

Johnson v. Spencer Press of Me, Inc., 364 F.3d 368 (1st Cir. 2004) .....................42

Kearney v. Town of Wareham, No. 00-10115-GAO, 2002 WL 229690 (D. Mass. Feb. 1, 2002), aff'd, 316 F.3d 18 (1st Cir. 2002).................26

Kourouvacilis v. American Fed'n of State, County & Mun. Employees, 65 Mass.App.Ct. 521, 841 N.E.2d 1273 (2006) .............47

Lawyer Disciplinary Bd. v. Ball, 633 S.E.2d 241 (W.Va. 2006) ...........47

Lee v. Am. Eagle Air., Inc., 93 F. Supp. 2d 1322 (S.D. Fla. 2000) .......47

Marzuq v. Cadete Enters., Inc., No. 11-10244-FDS, 2013 WL 5437034 (D. Mass. Sept. 25, 2013) .................................................23

McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352 (1995) .........42

v

# TABLE OF AUTHORITIES
## (continued)

Page

Mesnick v. Gen. Elec. Co., 950 F.2d 816 (1st Cir.1991) ................................. 28, 35

Molski v. Peachy Canyon Winery, No. B198886, 2008 WL 2636572
(Cal. App. Ct. July 7, 2008)................................................................................47

Moussa v. Pa. Dept. of Pub. Welfare, 413 Fed. App'x 484 (3rd Cir.
2011) ...................................................................................................................32

Naser Jewelers, Inc. v. City of Concord, N.H., 538 F.3d 17 (1st Cir.
2008) ...................................................................................................................23

Pina v. Children's Place, 740 F.3d 785 (1st Cir. 2014) ..........................................28

Player v. Kansas City S. Ry. Co., 496 Fed. App'x 479 (5th Cir. 2012)..................33

Pottier v. Hewlett-Packard Co., No. SUCV200400231C, 2005 WL
3721103 (Mass. Super. Nov. 7, 2005)................................................................36

Ramirez-De-Arellano v. Am. Airlines, Inc., 133 F.3d 89 (1st Cir.
1997) ...................................................................................................................35

Ray v. Geo Grp., Inc., 547 F. App'x 443 (5th Cir. 2013)......................................28

Red Carpet Corp. v. Miller, 708 F.2d 1576 (11th Cir.1983) .................................46

Sekamate v. Newton Wellesley Hosp., No. Civ.A.00-12528-DPW,
2002 WL 31194873 (D. Mass. Sept. 3, 2002)...................................................35

Smith v. Chrysler Corp., 155 F.3d 799 (6th Cir. 1998)..........................................29

Stonehill College v. M.C.A.D.441 Mass. 549 (2004) .............................................44

Travers v. Flight Servs. & Sys., Inc., 737 F.3d 144 (1st Cir. 2013)............... passim

Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517 (2013) ...........................23

Venegas-Hernandez v. Sonolux Records, 370 F.3d 183 (1st Cir. 2004)................22

Wilson v. B/E Aerospace, Inc., 376 F.3d 1079 (11th Cir.2004) .............................33

**TABLE OF AUTHORITIES**
**(continued)**

Page

<u>Woodman v. Haemonetics Corp.</u>, 51 F.3d 1087 (1st Cir. 1995) ............................54

## **RULES**

FED. R. EVID. 408(a)..................................................................................................53

FED. R. EVID. 801(d)(2)(D) .....................................................................................54

S.J.C. Rule 3:07, Rule 3.3 ................................................................. 52, 53

S.J.C. Rule 3:07, Rule 3.4 ................................................................. 50, 53

S.J.C. Rule 3:07, Rule 3.5 ....................................................................50

S.J.C. Rule 3:07, Rule 8.4 ....................................................................50

## **TREATISES**

18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE §
    134.22[2][b] (3d ed. 2012)..................................................................22

Restatement (Second) of the Law Governing Lawyers § 37 (2000) ......................47

## REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

Appellant Flight Services and Systems, Inc. ("FSS") respectfully requests oral argument in this matter for two reasons.  First, this Court previously issued a notable decision in this same case, <u>Travers v. Flight Servs. & Sys., Inc.</u>, 737 F.3d 144 (1st Cir. 2013) ("Opinion"), which reversed summary judgment in favor of FSS and ordered the parties to trial based upon the anticipated trial testimony of Appellee Joseph Travers' ("Travers") former supervisor, Robert Nichols ("Nichols").  Nichols did not testify at trial.  Oral argument will therefore be important to assess the impact of this development against the actual trial evidence.  Second, the trial and post-trial briefing raised numerous, fact intensive issues pertaining to liability and damages raised in this appeal.  The record is lengthy and counsel for both parties are well-acquainted with it.  To the extent the Court has any questions regarding the record evidence (or absence of any evidence in the record), such questions could be addressed at oral argument.

1

## JURISDICTIONAL STATEMENT

This appeal is from a final order and judgment denying FSS's renewed motion for judgment as a matter of law and entering an amended judgment in favor of plaintiff Joseph Travers ("Travers") on July 1, 2014.  <u>See</u> Joint Appendix ("JA") 1478.  FSS filed its notice of appeal on July 7, 2014.  <u>See</u> JA1480.  The district court entered a second amended judgment on August 14, 2014, and a third amended judgment the following day, on August 15, 2014.  <u>See</u> JA1635-36.  FSS filed an amended notice of appeal on August 18, 2014.  <u>See</u> JA1637.

## ISSUES PRESENTED

1.    Whether the district court erred in denying appellant FSS's motion for judgment as a matter of law after the district court ruled, post-trial, to grant a new trial/remitittur given that:

(i)    Travers failed to present any testimony of retaliatory animus from Nichols at trial, which anticipated evidence previously caused this Court to reverse summary judgment in favor of FSS;

(ii)    the district court, in its post-trial ruling, properly excluded hearsay evidence admitted initially at trial wherein Travers tried to testify as to what Nichols supposedly said to him about FSS's alleged retaliatory animus;

(iii)    it is the "law of the case" that, without Nichols' anticipated testimony, Travers had insufficient evidence of retaliatory animus at summary judgment before trial, and Travers failed to present any new evidence of retaliatory animus at trial (other than that referenced in (ii) above, which the district court properly excluded post-trial); and

(iv)    FSS presented evidence that Travers was *directly accused* by a passenger of tip solicitation, he *admitted to* tip solicitation, every witness agreed that his admissions constituted tip solicitation and would lead to termination, and consistent with every other employee accused of tip solicitation *directly by a*

*passenger*, Travers' employment was terminated (including other employees who, unlike Travers, *did not admit* to tip solicitation).

2.     Whether the jury had sufficient evidence from which to award Travers $90,000 in back pay and whether Travers' testimony at trial could fairly support the district court's $50,000 emotional distress award after remitittur.

3.     Whether the district court erred in awarding $176,185 in attorneys' fees and $7,398.45 in costs despite (a) Travers' counsel's engaging in inappropriate conduct at trial for which she was reprimanded by the district court, and (b) Travers' admissions that he engaged in fraud while employed by FSS.

## STATEMENT OF THE CASE

This is a case in which summary judgment was initially granted to FSS for legitimately terminating Travers for engaging in tip solicitation, but was reversed by this Court considering the anticipated evidence at trial from Travers' former supervisor, Nichols.  Specifically, according to his affidavit in opposition to summary judgment, Nichols would supposedly have testified at trial that FSS's CEO, Robert A. Weitzel ("Weitzel"), harbored retaliatory animus toward Travers. See JA390-91.  Therefore, even though FSS had substantial proof it terminated Travers as a skycap at Logan Airport for tip solicitation, with this anticipated evidence from Nichols, this Court determined that a reasonable jury could find that retaliation was the "but-for" cause of Travers' termination.  See Opinion at 146-50.

However, Nichols never testified at trial.  Instead, Travers attempted to substitute for Nichols through his own testimony at trial, claiming that Nichols told him things that Weitzel said about him that could support an inference of a retaliatory termination.  Before trial, FSS argued that Travers should not be permitted to testify about what Nichols supposedly told him, and the district court reserved further analysis until Travers' actual testimony at trial.  See JA12 at DE-104.  At trial, over FSS's objection, the district court admitted such evidence from Travers, and the jury returned a substantial verdict for him.  Post-trial, however, and in response to FSS's Rule 50 and 59 motion, the district court reversed its

decision and properly excluded such evidence, leaving Travers with no evidence of retaliatory animus at trial.  See FSSADD16-17.

Although the district court granted FSS's Rule 59 motion for a new trial or remitittur, it erred in denying FSS's Rule 50 motion for judgment as a matter of law.  The district court's stated basis for denying such motion was its "review[ of] the [trial] testimony of [Sarah] Collier" ("Collier"), FSS's Director of Human Resources.  FSSADD18.[1]  However, no reasonable jury could have found retaliatory animus in Collier's testimony or otherwise.

## I.    FACTS RELEVANT TO THE ISSUES SUBMITTED FOR REVIEW

For its business, FSS contracts with airlines for a number of different types of services, including providing wheelchair attendants, baggage handlers, skycaps, cleaning and security personnel.  See JA596:17-22; JA765:1-5.

Travers was employed by FSS as a skycap servicing JetBlue customers at Logan Airport from 2004 until September 27, 2010.  See JA965:5-8; JA1243-44.  He was one of eleven skycap plaintiffs in a 2008 wage lawsuit against FSS and JetBlue Airways, Inc. ("JetBlue Lawsuit").  See JA561:21-25; JA1292.  Lisa Varotsis ("Varotsis") was FSS's general manager in Boston at the time of Travers' termination.  See JA625:10-17.  John Cardinale ("Cardinale") was the manager responsible for FSS's operations at the JetBlue curb.  See JA622:17-623:6;

---

[1]    The district court's Order erroneously refers to "Helen" Collier.

JA767:4-8.  Collier was FSS's Director of Human Resources.  See JA749:1-12.

Collier did not work in Boston.  See JA865.

At all times relevant hereto, FSS's employee policy manual expressly

prohibited the solicitation of tips, stating:  "Employees who are found to have

solicited tips will be terminated immediately."  See JA767:2-769:12; JA1271.

Furthermore, FSS's employee policy manual lists a number of matters that will

lead to suspension pending investigation for termination, and "Solicitation of tips"

is specifically included.  See JA951:10-952:2; JA1279.  FSS's employment policy

manual also requires that employees behave in a "patient, courteous and

respectful" manner "[w]hen dealing with the public" and "be tactful in the

performance of their duties, . . . control their tempers, and excise patience and

discretion" and the failure to do so "will result in disciplinary action up to and

including termination."  See JA950:10-951:4; JA1273.

On September 3, 2010, FSS received a written complaint from a JetBlue

passenger, Michelle Saulnier ("Ms. Saulnier"), which said:

> The baggage man informed me that a tip is required just as you would
> tip at a restaurant.  He said this is his lively hood. [sic]  When I only
> tipped $1 he got angrier and said he was sorry I didn't like the service.
> He walked away, told someone he was going on break & slammed the
> door.  I felt like he was hussling [sic] people.

JA1200.  Ms. Saulnier made this complaint directly to a JetBlue supervisor,

Jocelyn Bue ("Bue"), who testified at trial about their interaction as follows:

Q.    How did you become aware of [the] complaint [against
      Travers]?
A.    From somebody calling me on the radio to come and talk to a
      [passenger] who was upset.

***

Q.    Did you do that?
A.    Yes.
Q.    So you were called to, what, the customer service area?
A.    Yes.
Q.    And you met with the passenger?
A.    Yes.

***

Q.    Can you describe how [the passenger] seemed when you met
      with her?
A.    She was upset.
Q.    Was she angry upset or other upset.
A.    No, she was just like -- just shaken upset, like visibly, almost in
      tears, I guess.
Q.    So emotionally upset?
A.    Yes.

***

Q.    When you met with her and she made her complaint, did you
      know which skycap she was talking about?
A.    No.

JA1078:12-14, JA1078:19-24, JA1079:3-9, JA1079:12-14.  Bue prepared her own

statement to memorialize her meeting with Ms. Saulnier, which read as follows:

> I was called to the Service Center to speak with a customer on Friday
> September 3, 2010.
> Ms. Saulnier was extremely upset.  She told me that she had checked
> in outside with a skycap and left feeling bullied.
> The Customer stated she handed the skycap a $100.00 bill and was
> asked how much change she wanted back?  Her reply was $98.00.
> The skycap then told her it was customary to tip that this was his
> lively hood. [sic]
> The customer then replied she would like $97.00 back; the skycap's
> response was I am sorry you didn't like my service.

> The Skycap then announced he was taking his break turned [sic] to go into a room slamming the door.
> I asked her to describe the skycap and she said he was the only white male out there.
> I apologized for his actions and said that I would turn his name into his Manager so it could be addressed to further prevent this from happing [sic] to another customer.
> I asked her please write a statement including her Name, PNR, and phone number in case the Manager from FSS wanted to contact her.

JA1240.  That same day, Cardinale, Travers' direct supervisor, and Nabil Agba

("Agba"), duty manager, met with Travers regarding this incident, and Travers,

himself, wrote the following statement:

> I do Recall customer.  When she Arrived At Podium, I Requested I.D. and How many Bags.  Proceeded to Checkin Customer.  Informed her of $2.00 fee.  Adv customer fee was JetBlue and Tip was not included.  Cust got upset and stated she didn't have to Tip.  I Responded Tip was optional Just Like Restaurant and I Apologize if she Didn't Like The Service.  I then went on Break.

JA1237-38; see also JA654:19-656:12.

Per company policy, FSS suspended Travers' employment immediately

pending investigation.  See JA1237-38.  Also per policy, Varotsis began an

investigation into the allegations and during her investigation, met with Travers.

Id.; see also JA625:10-626:9; JA1241-42.

After investigation, Varotsis recommended the termination of Travers'

employment due to (1) tip solicitation and (2) rude conduct toward the passenger.

See JA898:16-21; JA933:19-24; JA1243-44.  Varotsis's decision was reviewed by

Collier, who approved it.  Id.

9

At trial, both Cardinale and Collier testified that what Travers was accused of, and what he admitted to, constituted tip solicitation. See, e.g., JA779:12-81:7; JA782:12-85:10; 957:21-60:19.  There were five skycap witnesses at trial (three called in Travers' case and two called in FSS's case), each of whom testified that if they said what Travers said, it would be tip solicitation and they would be fired.

Hannah Morris ("Morris") testified for FSS as follows:

Q.     What would happen to you if a passenger accuses you of soliciting a tip?
A.     I would be fired.
Q.     You're sure of that?
A.     Yes.
*** 
Q.     You wouldn't tell a passenger that your service[] on a curb is like service in a restaurant, would you?
A.     No.
Q.     Why would you not do that?
A.     It's suggesting a tip.
Q.     Is that tip solicitation?
A.     Yes.
*** 
Q.     Would you say that "the gratuity is not included"?
A.     No.
*** 
Q.     What do you think would happen to you if . . . a passenger accused you of saying that[?]
A.     I would get fired.

JA1052:4-8; JA1053:6-12, 23-25; JA1054:1-7, 20-21; JA1055:1-4.

Rachid Faiz ("Faiz") testified that he would never make any of the same statements Travers admitted making -- including that he would never say "Tipping

is optional, like in a restaurant," or "The bag fee is $2. Tip not included" -- and that he would be terminated for making such statements.  JA1064:14-65:19.

Jing Wei ("Wei"), Travers' own witness, testified that he understood being found to have violated the tip solicitation policy would result in his termination. JA584:8-13.  He further testified he would never make the statements that Travers admitted to making, because they indicated to the passenger a tip was not optional:

> Q.    Would you compare your service at the curb to service at a restaurant?
> A.    No.
> Q.    Would you tell a passenger who didn't tip you or tipped you only a dollar, "I'm sorry you didn't like the service"?
> A.    No.
> Q.    Why wouldn't you do that?
> A.    Just, like I said, it's optional.
> Q.    So by saying those things you'd feel like you're telling the passenger it's not so optional, right?
> MS. LISS-RIORDAN: Objection.
> THE COURT: Overruled.
> A.    Yes.

JA586:19-87:6.

Larry McLarty ("McLarty") testified he knew of the tip solicitation policy and other employees being terminated for violating the policy, and that he would never tell a passenger "tipping is like in a restaurant" or say "[s]orry you didn't like the service" if the passenger only tipped him one dollar.  JA726:16-28:4.

Regarding the statements Travers admitted making to the passenger, Ezequias Paz ("Paz") also testified:

> Q.    Is it okay to say to someone whose bag you're checking at the curb, tipping is optional just like a restaurant?
>
> A.    Never say that.

JA843:15-17.  Paz also admitted that none of the skycaps would tell a passenger,

"There's a $2 bag fee but gratuity is not included."  JA844:16-18.

Even Jocelyn Bue, JetBlue's supervisor who received Ms. Saulnier's

complaint, testified as follows:

> Q.    So you took [Ms. Saulnier's] statement without actually knowing what skycap she was referring to?
>
> A.    Yes.
>
> Q.    What did you expect to happen to the skycap this complaint was about?
>
> A.    I would assume that they would be fired.
>
> Q.    For sure?
>
> A.    Yes.
>
> ***
>
> Q.    In your mind, there is no doubt that the employee accused should have been fired?
>
> A.    Yes.

JA1080:4-11; 1087:24-88:1.

Further, at trial, the jury heard testimony and saw the same documentary

evidence that this Court reviewed on the appeal of summary judgment in FSS's

favor that other FSS employees who had not sued the company were also

terminated for tip solicitation (both before and after Travers).  That is:

▪    Emmanuel Adom ("Adom") was directly accused by a passenger of

tip solicitation, he acknowledged that an incident occurred, and he was terminated

in 2010 by Elisabet Kincaid.  See JA250-54; JA923:8-19; JA1211-13.

▪    Sami Gjinishi ("Gjinishi") was directly accused by a passenger of tip solicitation, he acknowledged that an incident occurred, and he was terminated in 2009 by Nichols.  See JA937:9-38:9; JA1215-17.

▪    Kwadwo Acheampong ("Acheampong") was directly accused by an entire family of tip solicitation, he *denied* that an incident occurred, and he was still terminated in 2009 by Nichols.  See JA936:1-12; JA1207-10.

▪    Lumiuri Noti ("Noti") was directly accused by a passenger of tip solicitation, he *denied* that an incident occurred, and he was still terminated in 2008 by Nichols. See JA940:18-41:4; JA1228-32.

Further, after Travers in 2011, Varotsis terminated another employee, Gerry Quaranto ("Quaranto"), for tip solicitation, and like Acheampong and Noti, he denied the allegation of tip solicitation.  See JA939:7-940:17; JA1218-27.

In its review of this same evidence of "comparable employees" at the summary judgment stage, this Court determined that this evidence was not sufficient to support an inference of retaliation.  See Opinion at 149-150 ("[W]e do not suggest that [the comparator] evidence paints a sufficiently clear picture of disparate treatment among employees to provide support for an inference of retaliation.").

At trial, Travers attempted to juxtapose these situations with that of Polikron Adhami ("Adhami"), whose personnel records reflect a suspension for ten days

and then a prompt resignation while suspended, upon an accusation by a passenger of tip solicitation.  See JA935:11-21; JA1285-87.  However, no reasonable jury could conclude that this evidence demonstrated FSS failing to apply its policy consistently, as Collier testified without rebuttal that Adhami would have been fired had he not resigned.  See JA920:8-17.

At trial, Travers also attempted to juxtapose these situations with that of Jing Wei ("Wei"), who was accused of tip solicitation within days of Travers, but who was not terminated.  See JA1174-83; see also JA589:3-90:9, JA590:18-25, JA805:25-806:13, JA806:19-24, JA807:9-25, JA824:21-24.  However, no reasonable jury could conclude that this evidence demonstrated FSS failing to apply its policy consistently, as the complaint about Wei came from a third party, not the passenger directly; moreover, unlike Travers, Wei denied the incident.  Id.  Notably, Wei was also one of the eleven plaintiffs in the JetBlue lawsuit, a fact which demonstrates that FSS applied its tip solicitation policy without regard to an employee's "plaintiff" status.  See JA1292.  As with the evidence regarding Adom, Gjinishi, Acheampong, Noti and Quaranto, this Court reviewed the evidence about Wei being accused of tip solicitation, but not being terminated, on the appeal of summary judgment in FSS's favor.  See Opinion at 149-150 (block quoted infra at 30).  Along with other evidence of comparable employees, this Court noted that it did not support an inference of retaliation.  Id.  Finally, it is notable that, as set

14

forth above, Wei himself testified at trial that if he had said what Travers said, it

would be tip solicitation.  See JA586:19-87:6.

As Collier testified at trial, when there's a direct complaint of tip solicitation

by the aggrieved person, or when the company can otherwise verify the complaint

if from a third party, the employee is terminated every time:

> Tip solicitation is tip solicitation. It doesn't matter the extent, how bad
> or how less that it was. Dead is dead, and tip solicitation is tip
> solicitation.

JA932:20-22; see also JA941:5-21 (Collier elaborating on this statement).  Collier

also identified three different scenarios where tip solicitation comes up, and what

she would expect to happen in response to each:

> The first type is we get a customer complaint, and we get an
> employee statement, and the statements corroborate each other, like in
> the case of Joe Travers.
>
> The second case we get is we get a firsthand customer
> complaint and the employee denies it. But, again, in our experience, if
> the employee has -- if a passenger has taken that time to stop traveling
> and make a complaint, then that employee is always terminated . . . .
>
> And the third type is a third-party complaint. That means . . .
> somebody else makes a complaint, and we cannot get a firsthand
> statement from the passenger that was actually involved in the
> incident, like in Wei's case, Jing Wei, then that employee is not
> terminated.

JA954:13-955:5.  In fact, this is exactly how the trial evidence showed FSS

handled these three types of situations.  See Acheampong, Adom, Gjinishi,

Quaranto, Noti and Wei, supra, at 12-15.

15

In response to his termination, Travers sued FSS for retaliation under the Fair Labor Standards Act ("FLSA") and Massachusetts wage laws, claiming that FSS terminated his employment as a result of his participation in the JetBlue Lawsuit.  See JA25-30.

## II.  RELEVANT PROCEDURAL HISTORY

Travers brought suit against FSS on January 31, 2011.  See JA1-2.  On July 13, 2012, FSS moved for summary judgment (JA88-293), which the district court granted on March 7, 2013.  See JA491-496.  The district court examined Travers' evidence regarding the anticipated trial testimony of Nichols and reasoned:

> [E]ven if Weitzel[, FSS's CEO,] had harbored deep resentment against Travers and wished that he be fired, there is no evidence that Weitzel played any role whatsoever in the termination decision, nor is there any evidence that those who were involved in that decision knew of Weitzel's views about Travers.  Nichols, the only manager shown to have had knowledge of Weitzel's sentiments, had left the company five months prior to the termination.

JA495.

This Court reversed, reasoning:

> In many cases, the lack of . . . direct evidence linking the person expressing animus to the allegedly retaliatory act would create a fatal gap in proof that could not be bridged except through implausible inference or unsupported surmise. Here, though, the retaliatory animus resided at the apex of the organizational hierarchy. It repeatedly took the form of express directives to Travers's supervisor, Nichols, in the presence of another senior manager, Weitzel's son [Bobby Weitzel (hereinafter, "Bobby")]. A rational juror could conclude that such strongly held and repeatedly voiced wishes of the

king, so to speak, likely became well known to those courtiers who
might rid him of a bothersome underling.

See Opinion at 146-47 (internal citations omitted).  This Court held:

> (1)    there remains a genuine dispute as to whether the people who
> decided to fire Travers acted with awareness of the CEO's desire to
> retaliate and,
>
> (2)    if so, whether Travers would have been fired anyway for
> reasons other than pursuit of his rights under the FLSA.

Id. at 150 (numbering and paragraphing added).

Upon remand, the district court set this matter for trial, and the parties

engaged in pre-trial briefing on various legal points, including whether Nichols'

purported statements could be admitted into evidence.  See JA12 at DE-104; see

also JA13 at DE-107.  Considering that Nichols lived out of state beyond the

subpoena power of the court, upon Travers' motion, the district court permitted

Travers' to attempt to obtain Nichols' testimony through video transmission at

trial.  See JA10 at DE-78; JA11 at DE-94.  The parties also briefed whether

Travers should be permitted to testify as to what Nichols supposedly said to him

about Weitzel's comments.  On that issue, the district court held:

> Travers will be permitted within the bounds of the Rules of Evidence
> to testify as to his role in bringing the underlying lawsuit and his
> attempts to persuade co-workers to join or persist in the lawsuit, and
> any direct communications that he personally received from senior
> management expressing disapproval of his involvement in the
> litigation (which might include the statement attributed to Nichols that
> is cited in the First Circuit's [Opinion]), if it was made prior to
> Nichols' own termination and if Travers can show that Nichols was a

17

senior enough figure at FSS for his statement to be admissible under
FED. R. EVID. 801(d)(2)(D).

JA12 at DE-104.

The parties tried this case from March 3, 2014 through March 7, 2014.  See
JA525-1166 (trial transcript).  Neither Nichols, Weitzel nor Bobby Weitzel
testified at trial.  See JA1167 (list of trial witnesses).  Varotsis also did not testify.
Id.  Varotsis had been terminated by FSS in 2013, and had a pending lawsuit
against the company.  See, e.g., JA1289-90.  She was subpoenaed by both parties
to testify, but was "unwilling[] to appear as a witness" and "outside the 100 mile
reach of the [district c]ourt" at the time of trial.  JA14 at DE-118; see also JA850-
862.  The parties ultimately agreed to a stipulation about Varotsis, which the
district court read to the jury, as follows:

> You are not to draw any inferences in favor of, or against, either Mr.
> Travers or Flight Services & Systems for not calling Lisa Varotsis as a
> witness in this matter.

JA1093:8-10; see also JA15 at DE-124.

Because Nichols did not testify, Travers sought to admit Weitzel's alleged
retaliatory statements through his own testimony.  See JA618:19-JA620:7.  FSS
objected, as Nichols had been terminated from FSS in "April, 2010" (JA952:22-
53:1) and Travers testified the statements were made "[d]uring the summer of
2010, early summer of 2010" (JA619:8-13), but the district court permitted
Travers' testimony as to what Nichols supposedly told him Weitzel said.  See

18

JA618:19-JA620:7.  At the close of Plaintiff's evidence, and at the close of all the

evidence, FSS moved for judgment as a matter of law.  See JA15 at DE-123, DE-

126; JA16 at DE-134, JA1139:15-18, JA1158:4-10.  The jury rendered a verdict in

favor of Travers, awarding him $90,000 in back pay, $450,000 in future pay, and

$400,000 in emotional distress.  See JA1305-06.

      In post-trial briefing, FSS renewed its motion for judgment as a matter of

law pursuant to Rule 50 and also sought a new trial or amended judgment pursuant

to Rule 59.  See JA1308-52.  The district court granted FSS's motion in part for the

following reasons:

> The court identifies its principal reasons for granting the motion for a
> new trial or remittitur as: (1) its own error in permitting Travers to
> testify to a statement allegedly made to him by Robert Nichols, his
> former supervisor, attributing a retaliatory statement to the CEO of
> FSS, a statement that was made post-employment and without
> evidence that it was ever communicated to or made known to the
> manager (or managers) responsible for Travers termination; (2)
> plaintiffs counsels persistence (over the courts repeated admonitions)
> in making a highly prejudicial argument to the jury regarding the
> absence at trial of Michelle Saulnier; and (3) its determination that the
> award of damages by the jury is, in the instance of the award of future
> pay, based wholly on speculation and, in the instance of the award for
> emotional distress, grossly excessive.

FSSADD16.

      FSS renewed its motion for judgment as a matter of law considering the

ruling excluding the evidence from Travers.  See JA1424-64.  The district court

denied the motion, holding that the jury's determination that FSS retaliated against Travers was supported by the testimony of Collier.  See FSSADD18.

Ultimately, upon further briefing relating to damages, fees and costs, the district court entered judgment for $270,000 in back pay ($90,000 trebled) and $50,000 in emotional distress damages (see FSSADD26), and granted Travers' petition for attorneys' fees and costs ("Fee Petition") in the amount of $176,185 in attorneys' fees and $7,398.45 in costs.  See FSSADD19-25.

## SUMMARY OF THE ARGUMENT

The trial record is devoid of any evidence that retaliation was the "but-for" cause of Travers' termination.  This is particularly so without the anticipated testimony of Nichols, whether from Nichols himself, or through Travers as a substitute.  Pure and simple, the overwhelming evidence at trial demonstrated that FSS terminated Travers for tip solicitation; in fact, Travers admitted to tip solicitation.

From the procedural history of this case, it is clear that there never would have been a trial without Nichols' anticipated testimony.  The "law of the case" doctrine dictates that, as long as there was no other evidence of retaliatory animus at trial, judgment should enter for FSS.  At trial, there was no other evidence of retaliatory animus.  Moreover, the overwhelming evidence supported FSS's

legitimate reason for terminating Travers, such that no reasonable jury could conclude that retaliation was the "but-for" cause of Travers' termination.

Ultimately, the two questions posed by the First Circuit in its Opinion (see, supra, at 17) that needed to be addressed at trial were both answered in FSS's favor:  (1) there was no evidence that the supposed retaliatory animus of Weitzel reached the employees who terminated Travers (Varotsis and Collier); and (2) Travers would have been fired anyway for tip solicitation.  FSS properly exercised its business judgment terminating Travers, and FSS's business judgment should not be second-guessed.  The district court erred in denying judgment as a matter of law for FSS after its post-trial ruling excluding Travers' statements about what Nichols supposedly said to him.  Judgment as a matter of law should have been granted to FSS.  In fact, the district court should have at least granted a new trial without remittitur given the taint on the jury with the evidence from Travers it initially admitted.

Alternatively, this Court should reverse all of the damages awarded in this case because (a) the evidence was not sufficient to support either the back pay or emotional distress awards and (b) Travers admitted during his testimony to engaging in fraudulent conduct while employed by FSS from which he financially benefitted, precluding recovery in the event of a finding of liability based upon FSS's "unclean hands" and "after-acquired evidence" affirmative defenses.

In this same respect, the district court erred in awarding attorneys' fees in the amount of $176,185.00 and costs in the amount of $7,398.45 given (a) Travers' counsel's engaging in inappropriate conduct at trial for which she was reprimanded and which influenced the Court to order Travers to accept a remittitur or face a new trial and (b) Travers' admissions that he engaged in fraudulent conduct while employed by FSS.

## ARGUMENT

### I.     APPLICABLE LEGAL STANDARDS

#### A.     Standards of review for motions brought under Rules 50 and 59.

In this appeal, FSS "challenges the district court's denial of its motions for judgment as a matter of law and, therefore, engenders *de novo* review." Fresenius Med. Care Holdings, Inc. v. U.S., No. 13-2144, 2014 WL 3938648, at *2 (1st Cir. Aug. 13, 2014). Motions for a new trial or to alter or amend the judgment are reviewed for abuse of discretion. See, e.g., Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 190 (1st Cir. 2004) ("We review for abuse of discretion the district court's decision to grant the Rule 59(e) motion.").

#### B.     The "law of the case" doctrine.

Pursuant to the "law of the case" doctrine, "[t]he decision of an appellate court on an issue of law governs the issue during subsequent stages of litigation, and on any further appeal." 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 134.22[2][b] (3d ed. 2012). This Court has issued a ruling based on

the factual record at summary judgment that, if consistent with the facts at trial, "establish[es] the law of the case to be followed on [this] second appeal." Id.; see also Naser Jewelers, Inc. v. City of Concord, N.H., 538 F.3d 17 (1st Cir. 2008) (recognizing and applying the law of the case doctrine).

### C.    Standard to prove retaliation.

At trial, the district court properly instructed the jury as to "but-for" causation and explained the burden-shifting framework applicable in FLSA retaliation cases. See JA1149-51; see also Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2525 (2013); Opinion at 147 (recognizing that the parties "agree that the applicable standard requires 'but-for' causation"); Marzuq v. Cadete Enters., Inc., No. 11-10244-FDS, 2013 WL 5437034, at *6 (D. Mass. Sept. 25, 2013).  As this Court previously recognized, FSS should have prevailed at trial unless Travers proved that FSS "would [not] have fired [him] for soliciting tips even if he had never filed the FLSA lawsuit."  Opinion at 147-48.  Because Travers did not satisfy this standard, judgment should enter for FSS.

## II.    THE DISTRICT COURT'S EXCLUDING TRAVERS' HEARSAY STATEMENTS ATTRIBUTED TO C.E.O. ROBERT WEITZEL IS FATAL TO TRAVERS' CLAIMS

The district court's exclusion of the only evidence of retaliatory animus toward Travers should be dispositive of this case.  See FSSADD16-17.  Without such evidence in the trial record, it is the "law of the case" that the dispute upon

which this Court reversed summary judgment falls away. FSS's decision-makers were entitled to exercise their "business judgment" without being second-guessed, and judgment should enter for FSS as long as the trial record does not contain other evidence of retaliatory animus. It does not.

As noted above, this Court reversed summary judgment in anticipation of Weitzel's statements being presented at trial in an admissible form. As this Court previously reasoned:

> [Weitzel's statements] hone in on a specific employee, direct the precise action taken, and flow from a source with the formal authority to enforce compliance. On such a record, it is neither irrational nor unfair to infer – if a jury is so inclined – that knowledge of Weitzel's directive *spread* to other managers, themselves likely reluctant to frustrate the CEO's objective.

Opinion at 147 (emphasis added). Given the actual trial record which, as noted above, did not contain any evidence of retaliatory statements by Weitzel, the "spread" of any such retaliatory animus from Weitzel is not possible. Thus, the answer to the First Circuit's first "genuine dispute" for a jury to decide -- "whether the people who decided to fire Travers acted with awareness of the CEO's desire to retaliate" -- must be "No." Id. Judgment should enter for FSS on this ground alone.

Furthermore, "whether Travers would have been fired anyway for reasons other than pursuit of his rights under the FLSA" was only a proper question for a

24

jury "*if*" the answer to the first question posed by this Court was "Yes."  Opinion at 150.  Thus, this Court's second question could not be the basis for a reasonable jury to find in Travers' favor either.  This Court treated Weitzel's supposed statements as the basis for requiring "more" from FSS in order to avoid a trial, as it elaborated:

> On the facts viewed favorably to Travers, ***it remains plausible that the pre-existing retaliatory motive tipped the scales*** when the company decided whether Travers had violated company policy in a way that required his termination.

Opinion at 148 (emphasis added).  The "plausibility" of Travers' retaliation claim was premised upon "the pre-existing retaliatory motive" held by Weitzel that was not part of the trial record.  Considering the trial record, Weitzel's statements could not logically be disseminated to any other FSS employees, and judgment should enter for FSS on this ground.  Moreover, the district court should have, but did not, order a new trial entirely (without remitittur) considering how the initial admission of Weitzel's supposed statements to Nichols through Travers' testimony tainted the jury.  See, e.g., Gomez v. Rivera Rodriguez, 344 F.3d 103, 115-20 (1st Cir. 2003) (district court abused discretion by allowing hearsay to reach jury without adequate foundation to be admission of party opponent, ordering new trial for two defendants and judgment as a matter of law for third defendant).

25

## III.   NO REASONABLE JURY COULD HAVE FOUND FOR TRAVERS BASED UPON THE REMAINING TRIAL EVIDENCE

FSS recognizes that this Court will, of course, look beyond its previous ruling to the actual trial evidence, but even upon that review, judgment should enter for FSS.  Travers plainly failed to prove that retaliation was the "but-for" cause of his termination, as the remaining trial evidence was undisputed that:

(a)     tip solicitation is a terminable offense at FSS;

(b)     Travers was directly accused by a passenger of tip solicitation;

(c)     what Travers admitted to saying constituted tip solicitation according to all of his former co-workers who testified, FSS supervisors, and the JetBlue employee (Bue) who received the passenger's complaint; and

(d)     there is no evidence of any employee being treated better than Travers after being directly accused by the aggrieved person of tip solicitation – to the contrary, all employees, even those who unlike Travers, *denied* the passenger's complaint of tip solicitation, were terminated.

Thus, no reasonable jury could have found for Travers.  Travers' simply having been a plaintiff in a wage lawsuit did not prohibit his termination.  See Kearney v. Town of Wareham, No. 00-10115-GAO, 2002 WL 229690, at *3 (D. Mass. Feb. 1, 2002), aff'd, 316 F.3d 18, 24 (1st Cir. 2002) ("An employee may not escape discipline he deserves simply because at some prior time he had successfully prosecuted an FLSA claim against his employer."); see also Blackie v. Maine, 75 F.3d 716, 724 (1st Cir. 1996) ("The FLSA is [not] a shield against legitimate employer actions . . . .").

26

### A.     Tip solicitation is a terminable offense at FSS.

There is no dispute that tip solicitation is a terminable offense at FSS.

Travers repeatedly admitted that tip solicitation was a terminable offense during

his testimony, as did every other current or former FSS employee who testified in

this case.  See, e.g., JA583:19-84:13 (Wei); JA647:1-6 (Travers); JA682:1-4

(Travers); JA726:16-24 (McLarty); JA768:10-14 (Cardinale); JA910:20-25

(Collier); JA1051:9-52:8 (Morris); JA843:11-844:22 (Paz); JA1062:20-63:22

(Faiz).  FSS's policies also clearly state that this is a terminable offense.  See

JA1271 (under "Solicitation of Tips"); JA1279 (at item 26).

### B.     Travers was directly accused by a passenger of tip solicitation.

Travers was accused by a passenger of tip solicitation.  See JA1200.  Travers

admits the accusation, and the written complaint is in the record.  See Id.; see also

JA623:14-16; JA657:8-9; JA673:7-13 (Travers recounting events); JA746:1-7

(same, Cardinale); JA1078:9- JA1082:13 (same, Bue).  There is no dispute here.

### C.     Travers' written statement admits to tip solicitation, and all of his fellow skycaps agreed his words constituted tip solicitation.

The specific accusations made by the passenger, Ms. Saulnier, are included

in the record in her own handwriting.  See JA1200; see also supra at 7 (block

quote).  Travers corroborated the passenger's statements in writing, admitting he

told the customer "[t]ip was not included," tipping was "[j]ust [l]ike [in a

r]estaurant," and acknowledging the passenger "got upset and stated she didn't have to [t]ip."  JA1193.

Furthermore, as summarized in the facts above, all witnesses except Travers -- including the skycap witnesses who testified on Travers' behalf -- testified that what Travers said was inappropriate and/or that they would not make such statements because it would be tip solicitation.  <u>See</u> statement of facts, <u>supra</u>, at 10-12 (quoting/citing testimony of Bue, Cardinale, Collier, Faiz, McLarty, Morris, Paz, Wei).

As this Court has previously held, Travers arguing that the accusations against him were not serious enough to merit termination is insufficient to avoid judgment as a matter of law:

> Although [plaintiff] argues that [his] making disparaging comments about her coworkers and manager outside of work hours should not have been classified as disorderly or disruptive behavior as she understands the terms, *the point is immaterial*.  "Courts may not sit as super personnel departments, assessing the merits -- or even the rationality -- of employers' nondiscriminatory business decisions." <u>Mesnick</u>, 950 F.2d at 825.

<u>Pina v. Children's Place</u>, 740 F.3d 785, 798 (1st Cir. 2014) (affirming summary judgment for defendant-employer) (emphasis added); <u>see also</u> <u>Ray v. Geo Grp., Inc.</u>, 547 F. App'x 443, 446 (5th Cir. 2013) (affirming summary judgment for employer in FLSA retaliation case, explaining that "the only suggestion that [the] language [in dispute] should not be construed as [a policy violation] is [plaintiff's]

28

own [testimony and, i]ndeed, multiple witnesses have described the incident, but no one corroborates [plaintiff's] version of the facts[, and i]t is well settled that a self-serving [statement], without more evidence, will not defeat summary judgment") (internal quotations omitted); Hill v. Herbert Roofing and Insulation, Inc., No.13-cv-11228, 2014 WL 1377587, at *8 (E.D. Mich. Apr. 8, 2014) (granting summary judgment for employer in FLSA retaliation case, explaining that "a plaintiff cannot prove pretext simply by showing that defendant's decision was mistaken or not correct[; t]hus, even if [the decision maker] believed [the supervisor's] "erroneous" assertion that [plaintiff] had a history of tardiness and absenteeism, [the decision maker's] reliance on this assertion is not enough to show pretext") (citing Smith v. Chrysler Corp., 155 F.3d 799, 806 (6th Cir. 1998) (internal citations and quotations omitted).

No reasonable jury could find that Travers did not engage in tip solicitation.

**D.    FSS had more evidence of tip solicitation against Travers than against other employees terminated for tip solicitation, demonstrating no differential treatment in Travers' termination.**

The evidence of other employees being terminated for tip solicitation previously before this Court on the appeal of summary judgment in FSS's favor is the same as the trial evidence.  As this Court stated in such appeal, it was not sufficient to permit an inference of retaliation, and also not sufficient for this Court

to conclude that, even with the supposed statements from Nichols about Weitzel's supposed retaliatory animus, summary judgment be affirmed:

> *[W]e offer an important note of caution.* In subjecting to considerable scrutiny Flight Services' comparison of its treatment of Travers to its treatment of other employees accused of tip solicitation, *we do not suggest that this evidence paints a sufficiently clear picture of disparate treatment among employees to provide support for an inference of retaliation. We hold only that the evidence is not so clear as to place beyond reasonable challenge the assertion that Flight Services would have fired Travers* even had its CEO not been intent on doing so because of Travers's FLSA lawsuit.

Opinion at 149-50 (emphasis added).

In other words, were it not for Nichols' anticipated trial testimony about Weitzel's comments, this evidence could have resulted in the affirming of summary judgment for FSS. Now, without the predicate evidence of FSS's CEO, Weitzel, supposedly wanting to fire Travers for a retaliatory reason, this comparator evidence actually supports the reversal of the jury's verdict. Moreover, any additional evidence at trial about how FSS treated other employees accused of tip solicitation only further supports the legitimacy of FSS's reason for terminating Travers.

> ### 1. *This Court already evaluated the same comparator evidence that was presented at trial, and found that it did not create an inference of retaliation.*

This Court's previous analysis of the comparator evidence is the "law of the case" as it relates to Acheampong, Adom, Gjinishi, Quaranto, Noti and Wei. See

30

12-15, supra (detailing situations of Acheampong, Adom, Gjinishi, Quaranto, Noti, and Wei). The documentary evidence produced relating to these individuals was identical at summary judgment and trial. Compare JA211-54 (discipline files of Acheampong, Adom, Gjinishi, Quaranto, Noti and Wei included in summary judgment record), with JA1174-83, JA1207-32 (same). It was insufficient to support an inference of retaliation. See Opinion at 149-50.

The only additional testimonial evidence about these six comparators raised at trial had to do with Wei and Quaranto, and both situations further demonstrate the strength of FSS's position. Regarding Wei, Travers argued at trial (as he did in his previous appeal) that FSS returning Wei to work after a tip solicitation complaint shows FSS treated Travers unfairly. It is undisputed, however, that the complaint about Wei came from a family member, not the allegedly solicited person, and the text of the complaint and the testimony at trial is that was unclear whether the family member was with the passenger when the solicitation occurred. See JA590:18-25, JA806:16-24, JA823:9-11, JA824:21-24, JA913:5-11, JA913:19-20, JA1176. Collier and Cardinale felt that from the text of the complaint, the family member was not there. See JA806:16-24, JA823:9-11, JA824:21-24, JA913:5-11, JA913:19-20. Moreover, as Cardinale testified, FSS could not get substantiation from the passenger in Wei's case. See JA823:15-19.

On cross-examination of Collier, Travers attempted to make an issue of Collier being unable to absolutely confirm whether the third party had personally witnessed the incident -- thus attempting to raise an inference that this was a direct complaint by a person who observed the solicitation or who was solicited, like in Travers' case.  <u>See</u> JA913:5-11, JA913:19-20.  Such argument fails.  As Collier testified, her judgment was that, because the text of the complaint from the family does not indicate the third party's actual presence at the scene of the solicitation, she did not assume the family member's presence.  <u>Id.</u>  Indeed, it is logical that it would be unfair to Wei for Collier to assume the third party's physical presence without such language, and without such language, Collier's experience told her it was safer to err on the side of determining the passenger was not there.  <u>Id.</u>  Wei's and Travers' situations are not comparators in this regard.  <u>See</u> <u>Moussa v. Pa. Dept. of Pub. Welfare</u>, 413 Fed. App'x 484, 486-87 (3rd Cir. 2011) (affirming district court's determination that plaintiff's proposed comparator was not similarly situated to plaintiff because the allegations of misconduct against the proposed comparator had not been substantiated); <u>Crayton v. Valued Servs. of Ala., LLC</u>, 737 F. Supp. 2d 1320, 1329 (M.D. Ala. 2010) (granting summary judgment on plaintiff's discrimination claims, explaining that a plaintiff's proposed "comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer") (quoting <u>Wilson v. B/E Aerospace, Inc.</u>,

32

376 F.3d 1079, 1092 (11th Cir.2004)); see also Player v. Kansas City S. Ry. Co.,

496 Fed. App'x 479, 481 (5th Cir. 2012) (affirming summary judgment for the

employer after rejecting proposed comparators because "the employment actions

taken with respect to the plaintiff and his comparators must occur under nearly

identical circumstances") (internal quotations omitted); Hernandez v. City Wide

Insul. of Madison, Inc., 508 F. Supp. 2d 682, 695 (E.D. Wis. 2007) ("In order to be

a proper comparator, a fellow employee need not be identical to a retaliation

plaintiff in all respects, but he must be similar in all material respects. Bio v. Fed.

Express Corp., 424 F.3d 593, 597 (7th Cir.2005).").

Even if Travers engaged in a successful effort at trial to create an inference

that this "may have been" a direct complaint from a person who was present for the

alleged solicitation by Wei, at best, Travers' argument casts doubt on whether

Collier was correct in her judgment that the third party did not personally witness

the incident.  Casting doubt about whether Collier was correct in her reading of the

complaint against Wei does not prove "retaliatory animus" against Travers, or that

retaliation was the "but-for" cause of Travers' termination, particularly when there

was no doubt there was direct complaint by an aggrieved passenger against

Travers, and Travers admitted to tip solicitation in his written statement.  Of

course, comparing Wei to Travers also does not work when Wei denied that any

incident had occurred at all, so his own statement could not be considered against

him, unlike in Travers' case.  See JA1179-80; see also JA589:3-90:9, JA805:15-06:13.[2]

Regarding Quaranto, Agba testified for Travers that he remembered Quaranto being put back to work by a duty manager after the accusation of tip solicitation.  See JA1008:11-09:22.  While Travers produced no documentary evidence that this actually happened, Agba also admitted that Quaranto was fired for tip solicitation when Varotsis learned of the duty manager's action.[3]  Id.  In other words, even if Agba's testimony is assumed true, the undisputed evidence is that Varotsis consistently applied the FSS policy to Quaranto, who was not a plaintiff in a wage lawsuit, and even when he denied the incident.  See supra at 13.

In short, with all six of these comparators where there is documentary and substantiated evidence in the record about their situations, no reasonable jury could find the evidence to support retaliation as the "but-for" cause of Travers' termination.

_____

[2]     It is true that Acheampong and Noti denied tip solicitation as well, but there, it was unambiguous that the complaint about tip solicitation *did come* from the person aggrieved.  See supra at 12 (analysis re: Acheampong and Noti).

[3]     Agba also testified that he could not think of any other instance of a skycap being directly accused of tip solicitation and going back to work, even temporarily, whether before or after Travers' situation.  See JA1008:11-09:22

> **2.** **_Collier's business judgment to terminate Travers should not be second guessed._**

Upon questioning, Collier clearly testified that neither Weitzel, nor his son, Bobby, made any suggestion that Travers needed to be terminated for bringing the JetBlue lawsuit.

> Q.    Did anyone at FSS, Mr. Weitzel, Sr., or his son, Bob Weitzel, Jr., make any suggestion that Mr. Travers needed to be terminated for bringing the lawsuit?
>
> A.    No, sir.

JA965:19-22. She further testified that Travers' participation in the JetBlue lawsuit had nothing to do with his termination. See JA966:3-5.

Indeed, when Collier approved Varotsis' decision to terminate Travers, that was an exercise in her business judgment which, as shown above, was applied consistently. Collier's business judgment should not be second guessed,[4] and this Court (like many others) recognizes that it is a legitimate, non-retaliatory/discriminatory reason to terminate an employee for a violation of company policy, such FSS's tip solicitation policy.[5] As Collier testified, to have

---

[4]    See Goncalves v. Plymouth County Sheriff's Dept., 659 F.3d 101, 107 (1st Cir. 2011) ("It is not our role to 'sit as super personnel departments, assessing the merits – or even the rationality – of employers' nondiscriminatory business decisions.'" Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir.1991)).

[5]    See Ramirez-De-Arellano v. Am. Airlines, Inc., 133 F.3d 89 (1st Cir. 1997); Anderson v. Home Depot U.S.A., Inc., No. Civ.A. 02-11000-DPW, 2004 WL 42569, at *3 (D. Mass. Jan. 8, 2004); Sekamate v. Newton Wellesley Hosp., No. Civ.A.00-12528-DPW, 2002 WL 31194873, at *1 (D. Mass. Sept. 3, 2002); Diorio v. East Boston Neighborhood Health Ctr., No. 08-P-866, 2009 WL 1608515, at *1

permitted Travers to remain employed with FSS despite the evidence against him "would have been wrong to everybody that [she] had terminated before him . . . [a]nd after him."  JA964:3-6.

On this point, it is worth emphasizing that Collier's exercise of any business judgment in Travers' situation was limited to _approving_ Varotsis' initial determination to fire Travers based on her investigation and FSS policy.  See, e.g., JA867:21-68:6; JA898:16-21, JA957:14-16.  At trial, the parties expressly stipulated that the jury could draw no inference in favor of either party regarding Varotsis' not testifying, rendering any theory that Collier was exercising _her own_ retaliatory animus against Travers even more speculative.[6]  See JA1093:8-10; see also JA15 at DE-124.

### 3.    _The additional "evidence" Travers introduced at trial cannot support an inference of retaliation either._

At trial, Travers attempted to cast doubt on how FSS supposedly treated a few other employees supposedly accused of tip solicitation, but such effort proved

---

(Mass. App. Ct. June 10, 2009); Pottier v. Hewlett-Packard Co., No. SUCV200400231C, 2005 WL 3721103, at *5-6 (Mass. Super. Nov. 7, 2005); Clinton v. Beverly Enters.–Mass., Inc., No. 964947, 1998 WL 1182244, at *3-4 (Mass. Super. Feb. 20, 1998).

[6]    Travers has not argued that Cardinale harbored any retaliatory animus against him.  However, FSS notes that the trial evidence is undisputed that Cardinale did not conduct the investigation into Travers' conduct or make any recommendation to Collier regarding Travers' termination.  See, e.g., JA741:25-JA743:18.

to be nothing more than "overly attenuated inferences, unsupported conclusions, and rank speculation," (Goncalves, 659 F.3d at 107) which is "insufficient to establish a genuine issue of fact." Opinion at 146. As this Court has detailed, unsupported assertions regarding alleged comparators must be disregarded as being inherently speculative. See Goncalves, 659 F.3d at 107 (disregarding comparator evidence as being speculative); see also Horn v. U.P.S., Inc., 433 Fed. App'x 788, 792-93 (11th Cir. 2011) (affirming summary judgment for employer in discrimination case after rejecting plaintiff's "contentions about three of his proffered comparators [because they were] unsupported by the record"); Irany v. Salem State College, No. 07-P-376, 2008 WL 222270, at *3 (Mass. App. Ct. Jan. 28, 2008) (affirming summary judgment in favor of employer, and rejecting the plaintiff's "alleg[ations] that none of his comparators received similar unfair" treatment where "he offered no substantiation beyond his own belief").

Each additional piece of "evidence" Travers attempted to raise at trial to suggest that there were other "comparators" to Travers who were treated more favorably is addressed below:

(i) Larry McLarty: McLarty vaguely testified for Travers on direct examination that he had once been accused of soliciting a tip but "given a break." JA721:15-24; JA722:17-23:6. Upon cross-examination, however, he admitted that unlike Travers, there was no written complaint made against him and FSS

37

confirmed, in response to a trial subpoena from Travers' counsel, that there was no record of any tip solicitation complaint ever being made against McLarty.  See JA733:12-20; JA942:16-43:19.  Most critically, McLarty also admitted on cross-examination that he had not actually been accused of tip solicitation, but of saying exactly what was on the curbside sign -- *i.e.*, "that a tip was optional" -- which all three of Travers' skycap witnesses agreed was permitted.  Compare JA1170 (curbside sign stating "Tipping is optional…"), with JA736:4-13, 709:13-15 (McLarty testifying he could state what was on the sign to the passengers); JA569:25-70:5 (Wei explaining that it was permissible to say what was on the sign); JA844:14 (Paz testifying: "If you says what's on the sign, you're legal, you okay.").  Thus, no reasonable jury could conclude that McLarty was a comparator to Travers.

(ii)    Rachid Faiz:  McLarty claimed that Faiz had been accused of soliciting a tip the same day he was supposedly accused, but McLarty did not claim to have witnessed any such conversation, had no details about what supposedly happened, and admitted he had heard mention of it "just in passing."  JA723:7-11.  Travers produced no documentary evidence of such a complaint.  When FSS called Faiz to testify, moreover, Faiz testified he had never been accused of tip solicitation.  See JA1066:3-23.  As such, no reasonable jury could conclude that

McLarty's statement about Faiz cast doubt on whether Travers was treated differently than others.

(iii)    "Tony" and "Qoc":  There are also two individuals for whom there was only anecdotal evidence at trial, "Tony" and "Qoc."  Travers testified that "Tony" was, years ago, a skycap at FSS.  See JA698:15-21.  While FSS has no record of this person's employment (and Travers put forth no documentary evidence of this person's employment at trial), Travers admitted that "Tony" was accused of tip solicitation and never worked for FSS again.  See JA648:18-49:9.  Such vague and unsubstantiated testimony from Travers does not raise an inference that "Tony" was treated better than Travers for the same misconduct.  Further, Agba testified at trial regarding an employee named "Qoc" was supposedly accused of tip solicitation but not terminated.  Again, there was no documentary or specific testimony about the details of the incident; no evidence that it was a direct complaint by an aggrieved person or third party complaint, etc. against which to compare it to Travers' situation. See JA1007:6-24; 488:7-13.

As speculative and unsupported, the testimony about McLarty, Faiz, "Tony" and "Qoc" cannot demonstrate that retaliation was the "but-for" cause of Travers' termination.

Finally, Travers presented evidence about an employee named Polikron Adhami.  In 2008, Adhami was accused directly by a passenger of tip solicitation

39

and was immediately suspended for 10 days by the duty manager.  See JA1286.

Travers argued based on language in Adhami's disciplinary form, Adhami was

only suspended for 10 days, not terminated, and thereby his discipline was less

severe.  Travers' attempt to distinguish Adhami was insufficient for a reasonable

jury to conclude Travers was terminated for a retaliatory reason based on a number

of undisputed points, namely:  (1) Adhami resigned while being investigated

which, as Collier testified, often happens when the employee knows termination is

imminent (see JA1285; JA1287; JA920:8-17; JA935:11-21); (2) Collier testified

that based on the passenger's complaint, Adhami would have been terminated had

he not resigned (see JA935:11-21); (3) the FSS policy manual specifically states

that suspension pending investigation for termination is the protocol when it comes

to tip solicitation, which is what happened in Adhami's case (see JA1278-79); (4)

this incident occurred in 2008, while Nichols was in charge, not Varotsis, so it has

little relevance to Varotsis recommending Travers' termination to Collier (see

JA938:3-9; JA940:21-25); (5) Travers' inference about Adhami being treated

better is based solely on the "write-up" of the 10 day suspension that Travers relied

on for his inference that Adhami was treated better, but the undisputed record

evidence was that this write-up was by a low level supervisor, and not a personnel

decision by any relevant person -- such as Varotsis, Nichols, Cardinale, or Collier

(see JA1286); and (6) if language in Adhami's documents is examined in full, it is

40

notable that, upon his resignation, FSS determined Adhami was not "[e]ligible for [r]ehire."  See JA935:11-21; JA1285.  In other words, nothing about Adhami's situation could prove that retaliation was the "but-for" cause of Travers' termination.

## IV.   THE DISTRICT COURT ERRED IN AWARDING $270,000 IN BACK PAY AND $50,000 IN EMOTIONAL DISTRESS

### A.   No back pay or emotional distress damages should have been awarded given Travers' admissions of wrongful conduct.

In this case, FSS's raised "unclean hands" and "after-acquired evidence" affirmative defenses.  See JA46-47 (at eighth and fifteenth defenses).  These defenses were directly implicated by Travers' trial testimony where he claimed to have made $200 to $250 per day in tips during his 5 shifts per week, yet admitted that he only reported about $40 to FSS per shift.  See JA632:21-22, JA639:7-18.  Based on this testimony, Travers made between $65,000 and $50,000 per year in tips, but he underreported between $60,000 and $40,000 in tips each year.  See JA1185-90 (Travers' reported 2007-2009 tips as $9,229, $7,533, and $6,133.49, respectively).  Having been a skycap for FSS since 2004, this amounts to over $300,000 in unreported tips before his termination.  The application of the "unclean hands" and "after-acquired evidence" principles should prevent Travers from recovering any damages here.

As one court explained the "unclean hands" defense, courts "will not aid a wrongdoer who invokes the court's jurisdiction to profit from her own misconduct by recovering damages." Hubert v. Consolid. Med. Labs., 716 N.E.2d 329 (Ill. App. Ct. 1999) (affirming summary judgment against plaintiff in retaliation action based upon defendant's "unclean hands doctrine" defense where the evidence showed that plaintiff had engaged in wrongdoing while employed). Similarly, this Court has explained that remedies including back pay and front pay are cut off "when there is after-acquired evidence of wrongdoing that would have resulted in the employee's discharge from employer." Johnson v. Spencer Press of Me, Inc., 364 F.3d 368, 382 n. 14 (1st Cir. 2004). This "result follows from the simple guiding principle that the employee should be restored to the position he or she would have been in absent the [retaliation]: the employee would have been fired regardless of the [retaliation] as a result of the misconduct at the defendant's place of employment." Id. (citing McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 361-62 (1995)).

Notably, the underreporting of tips is not just against the law, but results in termination per FSS policy. See JA1268 ("It is the policy of FSS . . . that all tips you receive are claimed . . . ."). It is also a terminable offense at FSS to falsify company records. See JA1278 (at items 1 and 9). In other words, Travers should not be able to profit from his own misconduct, and this Court should eliminate the

award of any damages because he would have been terminated based on the "after-acquired evidence" rule, or alternatively, because he already profited and has "unclean hands."

### B. Alternatively, if the Court assumes Travers told the truth in his FSS records, the evidence is insufficient to support the back pay award.

In the event this Court does not reverse the award of damages based on Travers' claimed misconduct, it should, at the very least, accept Travers' self-reported earnings records as true. Doing so, no back pay should have been awarded.

The jury awarded Travers back pay of $90,000, which amounts to approximately $25,000 per year from his termination through the verdict. See JA1306. However, Travers, who was also employed by JetBlue the entire time he worked for FSS (see JA695:3-13), testified that, immediately after his termination from FSS, he more than doubled his approximately 15-20 hours per week at JetBlue to approximately 40 hours per week. See JA632:25- JA634:1. At the hourly rate he claimed he was paid at JetBlue of $17-18 per hour, that amounted to an extra approximate $350 per week. See JA633:3-24, JA635:18-21. Given certain evidence in the record that Travers often made $40 per shift in tips at FSS (see JA639:11-18 (Travers); JA729:16-24 (McLarty)), this meant he was making more money working for JetBlue. Next, shortly after his termination from FSS, Travers

testified that he was hired as a skycap for Southwest and earned $100 per each of his three shifts (or $300 per week in tips).  In so doing, he exceeded his reported income at FSS.  See JA634:13-22; JA635:22-36:7.

For these reasons, the $90,000 back pay award should be eliminated to reflect that, as FSS proved at trial, Travers fully mitigated his back pay damages.

### C.    The evidence was insufficient to support the remaining emotional distress award.

As the district court recognized, the jury's initial $400,000 emotional distress award before remittitur was "grossly excessive."  A20-21 at DE-173.  However, the remaining $50,000 award should be stricken as well, and reduced to $10,000.

In Stonehill College v. M.C.A.D., the SJC outlined a framework by which emotional distress damages awards should be reviewed, delineating the following four factors:  "(1) the nature and character of the alleged harm; (2) the severity of the harm; (3) the length of time the complainant has suffered and reasonably expects to suffer; and (4) whether the complainant has attempted to mitigate the harm (e.g. by counseling or by taking medication)."  441 Mass. 549, 576 (2004).  Here, Travers: (1) acknowledged he was never out of work and was again working as a skycap within 6 months; (2) admitted that he does not claim to have been permanently harmed; (3) was not shocked by the termination, as he knew of the

situation and possible repercussions weeks in advance; and (4) experienced no

physical manifestations of emotional distress.  See JA629:7-31:24.

Travers detailed the extent of the "emotional harm" that he suffered in his

own words as:

- losing his job "hurt a lot" because he "loved that job" (JA629:5-10);
- he felt like "it wasn't fair" (JA629:15);
- losing his job "was embarrassing" (JA629:24);
- he was "depressed" (JA630:14-20).

Travers' attributed his depression to an entirely different reason at trial:

> Q.    How did [your termination] affect you on a daily basis?
> A.    I was depressed. I had a mother that was sick at the time. She had Alzheimer's. So I was taking care of her also.

JA630:14-18.  Travers presented no medical records or expert testimony regarding

his emotional distress, and Travers' alternative reason for his depression raises a

causation issue.[7]  Indeed, the evidence in this case is no different (or less

---

[7]    See, e.g., Aponte-Rivera v. DHL Solutions USA, Inc., 650 F.3d 803, 810-11 (1st Cir. 2011) (affirming remittitur despite evidence of depression and medical treatment as "the source of the [plaintiff's] emotional distress [i]s 'at best, mixed' [as plaintiff had other] mental health issues, physical ailments, and general work stress"); DeRoche v. M.C.A.D., 848 N.E.2d 1197, 1202 (Mass. 2006) ("A critical point expressed in our Stonehill decision was that a finding [of] retaliation[] is insufficient by itself, as matter of law, to permit an inference of emotional harm. We emphasized that emotional distress, to be compensable, must be proved by substantial evidence [as well as] substantial evidence of a causal connection between the complainant's emotional distress and the respondent's unlawful act.").

persuasive) than in other similar cases where cases were remittitur of emotional

distress damages was ordered to $10,000.[8]  The same should occur here.

## V.    THE DISTRICT COURT ERRED IN ITS AWARDS OF ATTORNEYS' FEES AND COSTS

"It is well settled in this circuit that the district court has the duty and

responsibility to supervise the conduct of attorneys who appear before it, and that

this court will review the district court's supervisory rulings under an 'abuse of

discretion' standard. *Denial of attorneys' fees may be a proper sanction for*

*violation of an ethical canon.*"  Culebras Enters. Corp. v. Rivera-Rios, 846 F.2d

94, 97 (1st Cir. 1988) (emphasis added; internal citations omitted).[9]

The First Circuit is not alone in recognizing that counsel's misconduct at

trial is taken into account when the federal courts fashion fee awards; rather,

federal courts consistently recognize (1) their power to police the actions of

---

[8]    Franceschi v. Hosp. Gen. San Carlos, Inc., 420 F.3d 1, 5 (1st Cir. 2005)
(affirming remittitur of emotional distress from $200,000 to $10,000 because
plaintiffs presented little evidence supporting the claim they had suffered extreme
mental anguish); Gargano and Assocs. v. M.C.A.D., No. 20044550, 2005 WL
3605388, at *5-6 (Mass. Super. Oct. 28, 2005) (reducing $50,000 emotional
distress damages to $10,000, "where there was no expert medical testimony,
[complainant] was 'angry, distressed and demoralized' as a result of being
terminated, . . . saw a social worker and attended a stress management course,"
"felt anxious about having lost her health insurance, and was overwhelmed at the
prospect of looking for work").

[9]    See also In re Whitman, 51 B.R. 502, 506 (D. Mass. 1985) ("Services of a
poor quality which are the consequence of wrongful or unethical conduct, may
result in denial of any fee or an order for return of any fee paid." (quoting Red
Carpet Corp. v. Miller, 708 F.2d 1576 (11th Cir.1983)).

counsel practicing before them and (2) striking or reducing fee awards is an appropriate vehicle for doing so.[10]

Here, the district court did not reduce the fee award to Travers despite finding sufficient misconduct to warrant a new trial/remittitur.  See JA1628-1634. The district court's failure to do so was an abuse of discretion. See Section I.A, supra.  There are four reasons why the district court should have reduced or denied completely the attorney fee award, and this Court should either do so itself, or order the substantial denial or reduction of attorneys' fees on remand.

---

[10]    See In re Goldstein, 430 F.3d 106, 110 (2d Cir. 2005) (recognizing the federal district courts' "power to reduce or deny fees based on counsel's misconduct"); Lee v. Am. Eagle Air., Inc., 93 F. Supp. 2d 1322, 1336 (S.D. Fla. 2000) (after plaintiff prevailed at trial in an employment discrimination case, the district court "reduc[ed the award of] attorneys' fees based upon misconduct of counsel[, including at trial, from over $1.6 million to] approximately $358,423.20"); Molski v. Peachy Canyon Winery, No. B198886, 2008 WL 2636572, at *4 (Cal. App. Ct. July 7, 2008) (recognizing that "[a]n attorney's breach of a rule of professional conduct may negate an attorney's claim for fees"); see also Exact Software v. Infocon Sys., Inc., No. 3:03CV7183, 2011 WL 2490594, at *6 (N.D. Ohio June 22, 2011) ("Though [the lawyer seeking attorneys' fees] asserts otherwise, . . . unethical conduct may reduce the value of such services. A lawyer's improper conduct can reduce or eliminate the fee that the lawyer may reasonably charge . . . ."); Lawyer Disciplinary Bd. v. Ball, 633 S.E.2d 241, 253-54 (W.Va. 2006) ("'As a matter of policy, a lawyer should be regarded as "earning" his fee only when he provides legal services to his client in a manner consistent with his professional duties[.]' Kourouvacilis v. American Fed'n of State, County & Mun. Employees, 65 Mass.App.Ct. 521, 841 N.E.2d 1273, 1284 n. 22 (2006). Consequently, it is generally recognized that '[a] lawyer's improper conduct can reduce or eliminate the fee that the lawyer may reasonably charge[.]' Restatement (Second) of the Law Governing Lawyers § 37, p. 271 (2000).").

A.    **Travers' counsel's misconduct during closing argument requires substantial reduction or complete denial of fees and costs.**

During her closing, Travers' counsel purposefully and repeatedly attempted

to mislead the jury -- over FSS's objections and the district court's admonitions --

by improperly arguing to the jury that Ms. Saulnier's absence should be held

against FSS and improperly referencing facts not in evidence.  In this regard, the

following exchange occurred:

> MS. LISS-RIORDAN:    And then, most importantly, ladies and gentlemen, let me ask you this: Where is that customer? How come we didn't hear from that customer at this trial? Now, FSS told you --
> MR. ROSIN:    Your Honor, I object to that.
> THE COURT:    The witness would have been available to both sides, jurors. That's why he is objecting.

JA1128:20-29:1.    Travers' counsel then argued:

> MS. LISS-RIORDAN:    Sarah Collier told you, Well, we're not the FBI. It's not our duty to track down customers. I had the information I had. Well, that was one thing back then, but this case has gone to trial, and we're sitting in trial in federal court and that witness, Michelle Saulnier, not a very common name, was not here to testify before you.
> MR. ROSIN:    Your Honor --
> THE COURT:    Again, I don't think this is proper, Ms. Liss-Riordan. Either side can subpoena the witness.

JA1129:2-11.

Again, despite that, Attorney Liss-Riordan then veered into a further ethical breach, not only ignoring _two_ of this Court's admonishments, but then arguing information not in evidence:

> MS. LISS-RIORDAN:    You heard the Judge read you the names of the witnesses at the beginning of case, and he told you where they were from, and he said "Michelle Saulnier from Chelsea," not Quincy, like in Exhibit 11. I just want to ask you this: Maybe, maybe she's not here because they got the wrong skycap --
>
> MR. ROSIN:        Your Honor --
>
> THE COURT:        Please. Let's not --
>
> MS. LISS-RIORDAN:    Okay.
>
> THE COURT:        You shouldn't be doing this.

JA1129:12-21.

The Eighth Circuit recently issued a noteworthy opinion in Gilster v. Primebank, No. 12-3064, 2014 WL 1356814 (8th Cir. Apr. 4, 2014), summing up the risk that Travers' counsel took in her actions in closing:

> This is not an action we take lightly, for it means that [plaintiff] is deprived of a favorable jury verdict . . . . _However, as we said many years ago in an opinion that has been frequently cited by other courts, when a lawyer departs from the path of legitimate argument, she does so at her own peril and that of her client._

Id. at *6 (internal quotations omitted; emphasis added). The Eighth Circuit based its decision on the fact that "counsel's rebuttal argument included numerous comments that clearly violated [the applicable] Rules of Professional Conduct, titled Fairness to Opposing Party and Counsel," which is the identical rule

applicable to lawyers in Massachusetts.  Compare Id. at *2, with S.J.C. Rule 3:07,

§ 3.4(e) (titled "Fairness to Opposing Party and Counsel").

This is exactly what Travers' counsel did -- make statements about potential

witnesses that did not testify and raise other "facts" not in evidence -- which was

not just unfair, but highly prejudicial.  Indeed, although the district court found that

this was simply "overzealous rhetoric" (JA1631), that was error.  Travers'

counsel's repeated remarks purposefully violated a number of the Massachusetts

rules of professional conduct, including Rules 3.4, 3.5, and 8.4, and prejudiced

FSS.[11] Regardless of whether it violated a specific rule, however, this should have

resulted in the substantial reduction or denial of the fee request entirely.

### B.    Travers' counsel engaged in improper conduct regarding the testimony of Agba.

During the questioning of Agba at trial, over the repeated objections of

FSS's counsel, Travers' counsel questioned her own witness in a manner intended

---

[11]    See S.J.C. Rule 3:07, Rule 3.4, (titled "Fairness to Opposing Party and Counsel":  "A lawyer shall not: . . . (e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence"); id. at Rule 3.5 ("A lawyer shall not: (a) seek to influence a judge, juror, prospective juror, or other official by means prohibited by law; . . . . (c) engage in conduct intended to disrupt a tribunal" and Comment [1] "The advocate's function is to present evidence and argument so that the cause may be decided according to law[, including r]efraining from abusive or obstreperous conduct"); id. at Rule 8.4 ("It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another . . . (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice).

to elicit settlement communications before the jury, which would portray FSS in a

highly prejudicial light.  <u>See</u> JA1020:7-21:16.

During the questioning of Agba at trial, the following colloquy occurred:

Q.    Did you ever hear whether Lisa Varotsis was considering giving Joe
       Travers back his job?
MR. ROSIN:              Objection, your Honor.
THE COURT:              Considering giving him back his job?  You can have
                        that question.
A.    Yes, I did.
Q.    What did you hear?
MR. ROSIN:              Same objection, your Honor.
THE COURT:              Overruled.
A.    I heard that if Joe Travers went to corporate and dropped off that
       JetBlue case, he might have the job back.
MR. ROSIN:              Objection, and move to strike, your Honor.
THE COURT:              Yes, I don't see what the foundation of that is.
Q.    Mr. Agba, can you tell us a little about the circumstances of your
       hearing --
THE COURT:              My question is -- I understand the law, but how can
                        this be within the scope of her authority?
MR. ROSIN:              Your Honor, we are now into the discussions between
                        counsel.
THE COURT:              I'm not so much concerned about that as --
MR. ROSIN:              This is --
THE COURT:              -- we're attributing a statement to someone allegedly
                        as a corporate officer. I don't think this has been
                        established.
MS. LISS-RIORDAN:    Yes. He heard Ms. Lisa Varotsis say that, if he
                        dropped the lawsuit, he could get his job back.
MR. ROSIN:              And, your Honor, there was stuff going on between
                        counsel --
THE COURT:              The objection is sustained. The jury will disregard. As
                        I've explained, lawyer's statements are not evidence.

<u>Id.</u>

Travers' counsel later tried to argue the issue away before the Court, once the Court had dismissed the jury:

> MS. LISS-RIORDAN: Your Honor, I think you misunderstood. We are not saying that Mr. Varotsis offered to settle it. In fact, **Mr. Travers was not even aware that Ms. Varotsis was saying that "If Joe Travers dropped the lawsuit, he could get his job back."** This was not an offer to settle an action. **In fact, it was never communicated to Mr. Travers.** Mr. Agba was about to testify that Ms. Varotsis said and spoke about the fact that, "If Mr. Travers would drop the lawsuit, he could get his job back." **That was not a settlement offer.**
>
> THE COURT: Well, that's a settlement offer as far as I'm concerned. I don't see how you and interpret that but anything other.
>
> MS. LISS-RIORDAN: **It was never communicated to Mr. Travers or his counsel.**

JA1033:23-34:14 (emphasis added).

Arguing such matter to the Court, Travers' counsel did not act with candor toward the tribunal, in violation of Rule 3.3 of the Massachusetts Rules of Professional Conduct.  See Rule 3.3 (titled "Candor Toward the Tribunal" and stating, "A lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal[.]").  To establish this point, FSS produced to the district court a redacted a settlement communication from Plaintiff's counsel's firm discussing this precise matter, titled "**CONFIDENTIAL SETTLEMENT COMMUNICATION**" (JA1342-43 (capitals and bold in original)), which states as follows:

52

> On behalf of Mr. Travers, I request that all discussions about
> the lawsuits, possible resolution, and returning Mr. Travers to his job
> be done among the attorneys, not the clients.

Id.[12]  Travers' counsel's remarks, quoted above, against the clear settlement

communication included in the record (id.), violated both the rules of evidence and

professional conduct. See FED. R. EVID. 408(a); see also Rule 3.3 (quoted above);

Rule 3.4 (titled "Fairness to Opposing Party and Counsel" and stating, "A lawyer

shall not . . . knowingly disobey an obligation under the rules of a tribunal[.]").

Moreover, it was a highly prejudicial remark to make in front of the jury, one

which may have tainted their deliberations.

Indeed, the First Circuit has also deemed such conduct to be inappropriate.

See, e.g., Hodge v. Am. Home Assur. Co., 25 F.3d 1037 (1st Cir. 1994) (affirming

dismissal of action after plaintiff's counsel disregarded FED. R. EVID. 408, and

"referred to an offer of settlement apparently made by defendants" in her opening

statement, causing the district court to declare a mistrial).

Travers' counsel should not be permitted to escape the fair result of

engaging in such intentional conduct, and this Court should not give Travers'

counsel a "pass."  The situation with Agba was staged, from the first open ended

question, to the effort to drill down with closed questions that permitted the jury to

---

[12]    FSS does not agree with the substance of the letter, or the purported "facts"
it set forth, but it is clear its contents were a "settlement communication."

hear what Agba was supposedly going to say through lawyer commentary.  This

testimony and colloquy in front of the jury caused a miscarriage of justice and

should have resulted in the significant reduction or denial of fees.

### C.    Travers' counsel knowingly advanced inadmissible evidence at trial.

After trial, the district court reviewed Travers' testimony and determined

that his testimony about what Nichols supposedly told him that Weitzel said was

inadmissible.  See FSSADD16-17.  The district court found that the alleged

statements by Nichols occurred, according to Travers, after Nichols' employment

ended.  Id.

Prior to trial, Travers' counsel failed to inform the court of the timing of

these comments, despite the parties' briefing the issue and the Court ruling upon

it.[13]  Indeed, Travers and his counsel were the only people in the courtroom who

knew that Travers' supposed conversations with Nichols occurred during a time

that rendered them inadmissible.[14]  Yet, no such information was provided to the

---

[13]    See, e.g., JA12 at DE-104 (the Court holding that Plaintiff would "be
permitted within the bounds of the Rules of Evidence to testify" at trial as to "any
direct communications that he personally received from" Nichols "if [such
communication] was made prior to Nichols' own termination").

[14]    See FED. R. EVID. 801(d)(2)(D) ("The statement is offered against an
opposing party and . . . was made by the party's agent or employee on a matter
within the scope of that relationship and *while it existed*.") (emphasis added); see
also Woodman v. Haemonetics Corp., 51 F.3d 1087 (1st Cir. 1995) (recognizing
that Rule 801(d)(2)(D), at the time, required that the out-of-court statement be
"made during the existence of the [agency or employment] relationship" to

Court, and Travers presented such inadmissible and improper testimony to the jury with his counsel's assistance, violating Massachusetts Rules of Professional Conduct 3.3, 3.4, 3.5 and 8.4. See Footnote 11, supra. These actions contributed to the Court's reduction of hundreds of thousands of dollars in damages to Travers (see FSSADD16-17), and, accordingly, should have also impacted his counsel's fee award.

The district court should have reduced the fee award for this reason as well.

### D. Travers should also have to bear his own fees and costs given his admitted fraud while employed by FSS.

Finally, FSS appeals the district court's fee award as it is unreasonable given Travers' various admissions to fraud on the witness stand. As detailed in Section IV.A, supra, Travers himself argued at trial that he underreported over $300,000 in tips before his termination. With a back pay award that was founded upon tax evasion (and then trebled), Travers has been made more than whole and should not recover attorneys' fees in addition to that. Rather, based on FSS's affirmative defenses of "unclean hands" and "after-acquired evidence" (see JA46-47), Travers' admitted misconduct should be grounds for the denial of his requested attorneys' fees.

---

constitute an admission); Jenkins v. Wal-Mart Stores, Inc., 956 F. Supp. 695, 696 (W.D. La. 1997) ("The exception to the hearsay rule in Federal Rule of Evidence 801(d)(2)(D) requires that the statement be made *during the existence* of the employment relationship. A statement issued by a former employee after the employment ceased, is inadmissible in court.").

## CONCLUSION

For all of the foregoing reasons, the judgment should be vacated and judgment should enter for FSS as a matter of law. Alternatively, the awards of damages, attorneys' fees and costs should be reversed.

Respectfully submitted,

*/s/ Jeffrey M. Rosin*
Jeffrey M. Rosin (C.A.B. 39150)
Christopher M. Pardo (C.A.B. 1154495)
Constangy, Brooks & Smith LLP
Attorneys for Defendant-Appellant
Flight Services & Systems, Inc.
535 Boylston Street, Suite 902
Boston, MA 02116
(617) 849-7880

Dated:  September 19, 2014

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.    This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 12,917 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared with a proportionally spaced typeface using Microsoft Word 2003 in Times New Roman 14-point font.

*/s/ Jeffrey M. Rosin*
Jeffrey M. Rosin
Constangy, Brooks & Smith LLP
Attorney for Defendant-Appellant
Flight Services & Systems, Inc.
535 Boylston Street, Suite 902
Boston, MA 02116

Dated:  September 19, 2014

## <u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 19, 2014, I electronically filed the

foregoing document and attached addendum with the United States Court of

Appeals for the First Circuit ("First Circuit") using the First Circuit's CM/ECF

system.  I certify that the following counsel of record is registered as an ECF Filer,

and that she will be served by the CM/ECF system:

> Shannon Liss-Riordan
> LICHTEN & LISS-RIORDAN PC
> 729 Boylston Street, Suite 2000
> Boston, MA 02116

I also hereby certify that a true and correct copy of the Joint Appendix, filed this

same day with the First Circuit via hand delivery, was also served via hand

delivery upon the above-listed counsel at the above address.

> */s/ Jeffrey M. Rosin*
> Jeffrey M. Rosin
> Constangy, Brooks & Smith LLP
> Attorney for Defendant-Appellant
> Flight Services & Systems, Inc.
> 535 Boylston Street, Suite 902
> Boston, MA 02116

Dated:  September 19, 2014

# ADDENDUM TO BRIEF OF DEFENDANT-APPELLANT
## FLIGHT SERVICES & SYSTEMS, INC.

## TABLE OF CONTENTS

| Docket Entry | Description | Addendum Page No. |
|---|---|---|
| 54 | Opinion from the Unites States Court of Appeals for the First Circuit Vacating and Remanding Granting of Summary Judgment..………… | FSSADD1 |
| 134 | Electronic Order Denying FSS's Motion for Judgment as a Matter of Law at the Close of Plaintiff's Case-in-Chief ………..…………… | FSSADD15 |
| 173 | Electronic Clerk's Notes for Proceedings Held on April 30, 2014, Finding as Moot Plaintiff's Motion to Amend, Denying FSS's Motion for Judgment as a Matter of Law, and Granting in Part and Denying in Part FSS's Motion for a New Trial………………… | FSSADD16 |
| 184 | Order on Defendant's Motion for Limited Reconsideration of the Denial of its Motion for Judgment as a Matter of Law……………… | FSSADD18 |
| 202 | Memorandum and Order on Plaintiff's Application for an Award of Attorney's Fees…………………………..……..…………… | FSSADD19 |
| 204 | Amended Judgment in a Civil Case…………………..…………… | FSSADD26 |

# United States Court of Appeals
## For the First Circuit

————————————

No. 13-1438

JOSEPH TRAVERS,

Plaintiff, Appellant,

v.

FLIGHT SERVICES & SYSTEMS, INC.,

Defendant, Appellee.

————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

————————————

Before

Lynch, Chief Judge,
Thompson and Kayatta, Circuit Judges.

————————————

Brant Casavant, with whom Shannon Liss-Riordan and
Lichten & Liss-Riordan, P.C. were on brief, for appellant.
Christopher M. Pardo, with whom Jeffery M. Rosin and
Constangy, Brooks, & Smith LLP were on brief, for appellee.

————————————

December 12, 2013

————————————

KAYATTA, <u>Circuit Judge</u>.   Appellee Flight Services fired Appellant Joseph Travers as he pursued a lawsuit against the company under the Fair Labor Standards Act ("FLSA").   Flight Services says it terminated Travers for violating company policy. Travers says he was fired in retaliation for his FLSA lawsuit. Because a reasonable jury could return a verdict for Travers without relying on improbable inferences or unsupported speculation, we vacate the district court's grant of summary judgment to the company.

## I. Background

The district court granted judgment to Flight Services before any factfinder could evaluate the competing evidence and inferences.   We therefore describe the facts giving rise to this lawsuit in a light as favorable to Travers as the record will reasonably allow, without implying that the following is what actually occurred.   <u>McArdle</u> v. <u>Town of Dracut</u>, 732 F.3d 29, 30 (1st Cir. 2013).

Travers began work in 2004 as a skycap employed by Flight Services, a company that provides services to airlines, including JetBlue.   In April 2008, Travers filed a lawsuit against JetBlue. Roughly a year later, he amended the complaint to include Flight Services as a defendant.   As amended, the complaint brought five claims on behalf of Travers and ten other plaintiffs, representing a putative class of skycaps.   Count I of the complaint charged

-2-

JetBlue and Flight Services with violating the FLSA by failing to pay the federal minimum wage.

By all accounts, Travers acted as the leader among the plaintiffs, encouraging others to join the suit, coordinating with counsel on behalf of the plaintiffs, and serving as the first named plaintiff on the complaint. According to Travers's former supervisor Robert Nichols, after Travers filed the suit, Flight Services CEO Robert Weitzel, Sr., repeatedly yelled at Nichols to "get rid of [Travers]" and "talk [Travers] into dropping the lawsuit." Weitzel complained specifically about how much money the suit was costing the company. Weitzel made these statements on telephone conferences in which his son, the president of Flight Services, also participated. Nichols, in turn, told Travers to "be careful" because "the company would be coming after" him. Flight Services fired Nichols in April 2010. The record does not reveal the reasons for Nichols's termination, and no party has claimed that the termination is relevant to this case. Weitzel continued to serve as CEO.

By September 2010, Travers and Flight Services were awaiting decisions on Travers's motion to certify conditionally an opt-in class under the FLSA, and on Flight Services' motion for summary judgment. Meanwhile, on September 3, 2010, Flight Services received a complaint about Travers from a JetBlue passenger, who said that Travers had solicited a tip. Flight Services' employee

-3-

handbook bars solicitation of tips, classifying it as grounds for
termination:

> Solicitation of tips shall not be condoned. This
> includes any form of solicitation to include but not
> limited to -- advising passengers of the amount of the
> tip that they must give to the employee for the service
> provided, refusing to provide service without first
> receiving a tip, selling weight, etc. Employee who are
> [sic] found to have solicited tips will be terminated
> immediately[.]

The passenger complained about Travers to a JetBlue
supervisor, whose report indicated that the passenger was
"extremely upset" and felt "bullied." At the supervisor's request,
the passenger wrote a statement describing the incident:

> The baggage man informed me that a tip is required just
> as you would tip in a restaurant. He said this is his
> lively hood [sic]. When I only tipped $1 he got angrier
> [and] said he was sorry I didn't like the service. He
> walked away, told someone he was going on break & slammed
> the door. I felt like [he] was hussling [sic] people.

Later that day, Flight Services suspended Travers pending
investigation of the complaint and asked him to write a statement
describing his interaction with the passenger. Travers's account
read as follows:

> I do Recall Customer, Whe[n] She Arrived At Podium I
> Requested I.D. and How many Bags[.] Proceeded To Check
> in Customer[.] Informed her of $2.00 fee Adv Customer
> fee was JetBlue and Tip was not included, Cust got upset
> and stated she didn't have To Tip, I responded tip was
> optional Just Like Restaurant and I Apoligize [sic] If
> she Didn't Like The Service. I Then went on Break.

Three and a half weeks later, on September 27, 2010, Lisa
Varotsis, a general manager at Flight Services, fired Travers.

FSSADD4

Varotsis had recommended Travers's firing to Flight Services'
director of human resources, who approved it.   According to
Travers, Varotsis gave just one reason for his termination: tip
solicitation.

Travers filed his retaliation suit in January 2011.
After discovery, the district court granted summary judgment to
Flight Services.

## II. Standard of Review

We review de novo the district court's grant of summary
judgment.  McArdle v. Town of Dracut, 732 F.3d 29, 32 (1st Cir.
2013).   Under Federal Rule of Civil Procedure 56, a "court shall
grant summary judgment if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(a).   In this
case, as in many others, deciding whether a factual dispute is
"genuine" poses the most difficult challenge.  We label a dispute
genuine if "a reasonable jury, drawing favorable inferences, could
resolve it in favor of the nonmoving party. . . .   Conclusory
allegations, improbable inferences, and unsupported speculation,
are insufficient to establish a genuine dispute of fact."  Triangle
Trading Co., Inc. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir.
1999) (internal citations, quotation marks, and alterations
omitted).

-5-

### III. Analysis

Indisputably, Travers's evidence would enable a reasonable jury to conclude that Flight Services CEO Weitzel wanted to fire Travers because of the FLSA lawsuit. Nevertheless, Flight Services argues that the evidence concerning the circumstances of Travers's firing would not allow a reasonable jury to find a causal connection between Weitzel's retaliatory animus and that firing.

In support of its argument, Flight Services points, first, to the lack of any direct evidence that Weitzel had a role in the decision to fire Travers or that those who made the decision (Varotsis and the human resources director) were even aware of Weitzel's views. Flight Services correctly describes the evidence: the record contains no testimony or document chronicling any communication regarding Travers between Weitzel or Nichols and those who made the decision to fire Travers. In many cases, the lack of such direct evidence linking the person expressing animus to the allegedly retaliatory act would create a fatal gap in proof that could not be bridged except through implausible inference or unsupported surmise. See, e.g., Pearson v. Mass. Bay Transp. Auth., 723 F.3d 36, 41 (1st Cir. 2013); Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 10 (1st Cir. 1990); Gray v. New Eng. Tel. & Tel. Co., 792 F.2d 251, 255 (1st Cir. 1986).

Here, though, the retaliatory animus resided at the apex of the organizational hierarchy. It repeatedly took the form of

-6-

express directives to Travers's supervisor, Nichols, in the presence of another senior manager, Weitzel's son. A rational juror could conclude that such strongly held and repeatedly voiced wishes of the king, so to speak, likely became well known to those courtiers who might rid him of a bothersome underling. See Freeman v. Package Mach. Co., 865 F.2d 1331, 1342 (1st Cir. 1988) (observing in a discrimination case that "[t]he battle plan of the admiral is a valid datum in assessing the intentions of the captain . . . .").

A CEO sets the tone and mission for his subordinates, many of whom presumably consider it an important part of their jobs to figure out and deliver what the CEO wants. This CEO, we must assume, bristled so fiercely that he expressly and repeatedly demanded that Travers be fired. Weitzel's instructions qualitatively differ from the less probative remarks found unable to carry the plaintiff's burden in other cases. They are neither "stray," see Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 36 (1st Cir. 2001), nor ambiguous, see Gonzalez v. El Dia, Inc., 304 F.3d 63, 70 (1st Cir. 2002), nor stale, see Alvarado-Santos v. Dep't Of Health, 619 F.3d 126, 133 & n.5 (1st Cir. 2010). They hone in on a specific employee, direct the precise action taken, and flow from a source with the formal authority to enforce compliance. On such a record, it is neither irrational nor unfair to infer--if a jury is so inclined--that knowledge of Weitzel's

-7-

FSSADD7

directive spread to other managers, themselves likely reluctant to frustrate the CEO's objective.  After all, if  Weitzel would unabashedly and repeatedly voice such sentiments to Nichols, then why not to Nichols's replacement, Varotsis, or to the director of human resources, who approved the firing?  No compelling evidence shows that Weitzel's ire, or the cause for that ire, abated.  And the fact that Varotsis has not directly denied awareness of Weitzel's unhappiness with Travers adds further grist for such a line of thinking.

Flight Services next argues that Travers cannot show a causal link between retaliatory animus (no matter how widespread) and his discharge because he committed an offense that would have resulted in his termination anyway.  The parties agree that the applicable standard requires "but-for" causation.[1]  Flight Services is therefore correct that Travers's claim would fail if Flight Services would have fired him absent retaliatory animus.  See Kearney v. Town of Wareham, 316 F.3d 18, 24 (1st Cir. 2002).  And Flight Services also correctly reasons that the evidence here would allow a reasonable jury to conclude that Flight Services would have

---

[1] Because the parties agree, we need not determine the precise standard of causation applicable to this case.  We note, however, that the Supreme Court has required "but-for" causation under the similarly-worded anti-retaliation provision of Title VII of the Civil Rights Act of 1964, rejecting the "motivating factor" test applied by the lower court in that case.  Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013).

FSSADD8

fired Travers for soliciting tips even if he had never filed the
FLSA lawsuit.[2]   On review of the entry of summary judgment for
Flight Services, however, the question is not whether a reasonable
jury could find that Flight Services would have fired Travers even
in the absence of retaliatory intent.   Rather, the question
pertinent to our review of summary judgment is whether no
reasonable jury could find otherwise.

    We conclude that the evidence in this case would not so
limit the range of the jury's findings.   On the facts viewed
favorably to Travers, it remains plausible that the pre-existing
retaliatory motive tipped the scales when the company decided
whether Travers had violated company policy in a way that required
his termination.   According to the statement Travers wrote on the
day of the passenger's complaint, he told the passenger that a tip
was "optional just like [at a] restaurant."   Flight Services itself
posts a sign at the skycap stand similarly stating, "tipping is
optional but greatly appreciated," and Flight Services admittedly
allows its skycaps to tell customers directly that "tips are not
required but are appreciated."   The company's policy, by
comparison, does not define "tip solicitation" but includes only

---

[2]   Flight Services also claims other non-retaliatory
justifications for Travers's firing.   The other justifications,
however, find no provenance in any writing created prior to this
litigation, were not mentioned at all when Varotsis told Travers
why the termination was justified, and otherwise lack attributes
that would compel a jury to accept them as true.

FSSADD9

three examples, all of which are significantly more extreme than the conduct Travers has admitted: "advising passengers of the amount of the tip that they must give to the employee," "refusing to provide service without first receiving a tip," and "selling weight." Plausibly, then, Travers's conduct, while perhaps edging beyond what was expressly permitted, did not indisputably cross into what was clearly prohibited.

Flight Services counters that it does not matter whether Travers himself admitted to conduct that made termination certain. Rather, as long as an aggrieved customer made a first-hand complaint, "termination is essentially assured." This argument, though, runs aground on the testimony of Flight Services' own director of human resources. She said that Flight Services actually considers the statements of both the employee and the passenger, and then terminates the employee when it "feel[s] that it was, indeed, solicitation . . . ." Similarly, the written policy calls for termination not when solicitation is alleged, but when it is "found." In short, Flight Services' evaluation of accusations left room for judgment and discretion.

Nor does the record show that Flight Services terminated every employee accused of tip solicitation. Travers's former supervisor, Nichols, related an occasion when he had an employee transferred, not fired, for "bugging passengers for tips." Although Flight Services disputes this testimony, if believed by a

-10-

jury it would point in the direction of a finding that Travers
might well have been spared had he done only what he admitted
doing, but for a desire to get rid of him. <u>See</u> <u>Che</u> v. <u>Mass. Bay</u>
<u>Transp. Auth.</u>, 342 F.3d 31, 38 (1st Cir. 2003) (holding that
"[e]vidence of discriminatory or disparate treatment," such as
evidence that other employees were not disciplined for engaging in
the same conduct as the plaintiff, can be sufficient to show
retaliation).

At least one of Travers's coworkers, Jing Wei, was also
accused by an apparently unbiased third party of soliciting tips,
yet remains employed.  Flight Services argues that its retention of
Wei actually disproves Travers's case because Wei also participated
in Travers's wage lawsuit and was not fired.  But Travers, not Wei,
acted as the organizing force behind the suit and found himself in
the CEO's crosshairs.

Additionally, Flight Services argues that one can draw no
reasonable inference favorable to Travers from Wei's survival
because the case against Wei was weaker than that against Travers
and was insufficient to warrant termination.  The two cases must be
distinguished, says Flight Services, because the complaint against
Wei came from a passenger's daughter, who did not claim to have
witnessed the incident, while the complaint against Travers came
from the affected passenger herself.  While this difference
plausibly explains why Flight Services fired Travers and not Wei,

FSSADD11

a rational jury could also conclude on this record that the first-hand/second-hand distinction served merely as a post-hoc justification for disparate treatment. Importantly, Flight Services has produced no compelling evidence that it recognized such a distinction before tendering it as an explanation in this lawsuit.

The other proposed distinctions between Wei and Travers are similarly open to question. In its brief, Flight Services says that it was unable to confirm the allegation against Wei, but the record contains nothing to show that the company made any effort to do so. Flight Services also argues that Travers, unlike Wei, harassed Varotsis during her investigation of the complaint against him. But Flight Services failed to mention this distinction in explaining why Travers and Wei were treated differently in the statement of material facts submitted to the district court with its summary judgment motion, and presents no contemporaneous evidence to support it. Moreover, Travers denies it.

Besides attempting to distinguish Wei's situation from that of Travers, Flight Services also provides evidence that five other employees were fired for tip solicitation between 2008 and 2011. It is true that these five instances comport with Flight Services' proffered distinction between first-hand and second-hand complaints: in each case, Flight Services fired the employee after receiving a first-hand complaint against him. In four of the five

-12-

instances, however, the employee engaged in conduct going well beyond what Travers admitted to.  One threatened to abandon a passenger in a wheelchair unless he received a tip; a second attempted to rob a customer; a third brought a wheelchair-bound passenger to an ATM, demanded a tip, then dropped the passenger's luggage and pushed the passenger into a cart; and the fourth expressly demanded a tip of at least twenty dollars.  The fact that Flight Services fired these employees for such conduct does not mean that it would have fired Travers for materially less egregious conduct (assuming his account had been believed).  Only the fifth example lacks such additional elements pointing to a flagrant violation of company policy, but the termination there occurred almost one year after Travers filed this suit, greatly reducing the persuasive force of the example.

In so reasoning, we offer an important note of caution. In subjecting to considerable scrutiny Flight Services' comparison of its treatment of Travers to its treatment of other employees accused of tip solicitation, we do not suggest that this evidence paints a sufficiently clear picture of disparate treatment among employees to provide support for an inference of retaliation.  We hold only that the evidence is not so clear as to place beyond reasonable challenge the assertion that Flight Services would have fired Travers even had its CEO not been intent on doing so because of Travers's FLSA lawsuit.

-13-

## IV. Conclusion

For the foregoing reasons, as the record now stands, there remains a genuine dispute as to whether the people who decided to fire Travers acted with awareness of the CEO's desire to retaliate and, if so, whether Travers would have been fired anyway for reasons other than pursuit of his rights under the FLSA. We therefore <u>vacate</u> the district court's grant of summary judgment to Flight Services, and we <u>remand</u> to the district court for further proceedings consistent with this opinion. We award no costs.

<u>So ordered</u>.

FSSADD14

**From:** E　CFnotice@mad.uscourts.gov
**Sent:**　Friday, March 07, 2014 3:24 PM
**To:** Co　urtCopy@mad.uscourts.gov
**Subject:** Activity in Case 1:11-cv-10175-RGS Travers v. Flight Services & Systems, Inc. Order on Motion for Judgment as a Matter of Law

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### United States District Court

### District of Massachusetts

## Notice of Electronic Filing

The following transaction was entered on 3/7/2014 at 3:22 PM EST and filed on 3/7/2014
**Case Name:**　　　Travers v. Flight Services & Systems, Inc.
**Case Number:**　　1:11-cv-10175-RGS
**Filer:**
**Document Number:** 134(No document attached)

**Docket Text:**
**Judge Richard G. Stearns: ELECTRONIC ORDER entered denying [123] Motion for Judgment as a Matter of Law. (Seelye, Terri)**

**1:11-cv-10175-RGS Notice has been electronically mailed to:**

Jeffrey M. Rosin　　jrosin@constangy.com, cpardo@constangy.com, eruss@constangy.com

Shannon E. Liss-Riordan　　sliss@llrlaw.com, pacevedo@llrlaw.com, ssimpson@llrlaw.com

Christopher M. Pardo　　cpardo@constangy.com

Elizabeth A. Tully　　etully@llrlaw.com

**1:11-cv-10175-RGS Notice will not be electronically mailed to:**

FSSADD15

```
MIME-Version:1.0
From:ECFnotice@mad.uscourts.gov
To:CourtCopy@localhost.localdomain
Message-Id:5463087@mad.uscourts.gov
Subject:Activity in Case 1:11-cv-10175-RGS Travers v. Flight Services &Systems, Inc. Order
on Motion to Amend
```
Content–Type: text/html

# United States District Court

## District of Massachusetts

**Notice of Electronic Filing**

The following transaction was entered on 4/30/2014 at 1:21 PM EDT and filed on 4/30/2014

| | |
|---|---|
| **Case Name:** | Travers v. Flight Services & Systems, Inc. |
| **Case Number:** | 1:11–cv–10175–RGS |
| **Filer:** | |

**WARNING: CASE CLOSED on 03/07/2014**

**Document Number:** 173(No document attached)

**Docket Text:**

ELECTRONIC Clerk's Notes for proceedings held before Judge Richard G. Stearns: finding as moot [135] Motion to Amend; denying [152] Motion for Judgment as a Matter of Law; granting in part and denying in part [152] Motion for New Trial; Motion Hearing held on 4/30/2014 re [135] MOTION to Amend *the Judgment to Add Trebling, Interest, and Attorneys Fees and Costs* filed by Joseph Travers, [152] MOTION for Judgment as a Matter of Law MOTION for New Trial MOTION to Amend *Defendant FSS's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial or to Amend the Judgment, and Incorporated Memorandum of Law* filed by Flight Services &Systems, Inc. The court stated to counsel that it had reviewed the pleadings and its notes of the trial and was prepared to: (1) deny defendants Rule 50 motion for judgment as a matter of law, it being unable to say that on the evidence submitted, a reasonable jury could not have found that plaintiffs leading role in the Wage Act litigation brought against his employer FSS was the but–for cause of his termination; and (2) to allow defendants Rule 59 motion for a new trial should plaintiff reject a remittitur of damages. Conjugal Pshp by Jones v. Conjugal Pshp by Pineda, 22 F.3d 391, 397–399 (1st Cir. 1994). as follows: (a) back pay – $90,000 (unchanged and subject to trebling under the Massachusetts Wage Act); (b) future pay – $0 (reduced from $450,000); (c) emotional distress – $50,000 (reduced from $400,000). The court identifies its principal reasons for granting the motion for a new trial or remittitur as: (1) its own error in permitting Travers to testify to a statement allegedly made to him by Robert Nichols, his former supervisor, attributing a retaliatory statement to the CEO of FSS, a statement that was made post–employment and without evidence that it was ever communicated to or made known to the manager (or managers) responsible for Travers termination; (2) plaintiffs counsels persistence (over the courts repeated admonitions) in making a highly prejudicial argument to the jury regarding the absence at trial of Michelle Saulnier; and (3) its determination that the award of damages by the jury is, in the instance of the award of future pay, based wholly on speculation and, in the instance of the award for emotional distress, grossly excessive. With respect to front pay, the jury had before it only plaintiffs estimate that he would have lost $25,000 yearly over some 30 years of future employment at FSS – while front pay need not be precisely proved, on this testimony a 30–year award (or any award at all) cannot be

sustained. Conway v. Electro Switch Corp., 402 Mass. 305, 388–389 (1988). Front pay is compensatory in purpose and is not intended to punish an employer or provide a plaintiff with an undeserved windfall. Haddad v. Wal–Mart Stores, Inc., 455 Mass. 91, 102 (2009). With respect to emotional distress, the jury heard only plaintiffs self–interested testimony that he was embarrassed and depressed at having lost his job at FSS. There was no evidence of physical symptomatology, medical treatment, or counseling, or any evidence of resulting physical or mental infirmity or any inability to work (Travers testified that almost immediately after losing his job with FSS, he went back to work at Logan Airport). On this thin evidence an emotional distress award of $400,000 is vastly out of proportion. Trainor v. HEI Hospitality, LLC, 699 F.3d 19, 32 (1st Cir. 2012). Finally, the court observed that there is no appellate case in Massachusetts that would treat an emotional distress award as an employment benefit for purposes of trebling under the Wage Act, and this court cannot be expected to blaze any new trails in the matter. Ryan v. Royal Ins. Co. of Am., 916 F.2d 731, 744 (1st Cir. 1990). Plaintiff will have fourteen (14) days from todays date to accept the remittitur or elect to proceed with a new trial.. (Court Reporter: James Gibbons at jmsgibbons@yahoo.com.)(Attorneys present: Shannon Liss–Riordan for plaintiff; Jeffrey Rosin and Christopher Pardo for defendant) (Zierk, Marsha)

**1:11–cv–10175–RGS Notice has been electronically mailed to:**

Jeffrey M. Rosin    jrosin@constangy.com, cpardo@constangy.com, eruss@constangy.com

Shannon E. Liss–Riordan    sliss@llrlaw.com, pacevedo@llrlaw.com, ssimpson@llrlaw.com

John E. Duke    jduke@llrlaw.com, pacevedo@llrlaw.com

Christopher M. Pardo    cpardo@constangy.com

Elizabeth A. Tully    etully@llrlaw.com

**1:11–cv–10175–RGS Notice will not be electronically mailed to:**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10175-RGS

JOSEPH TRAVERS

v.

FLIGHT SERVICES & SYSTEMS, INC.

ORDER ON DEFENDANT'S MOTION FOR LIMITED
RECONSIDERATION OF THE DENIAL OF ITS MOTION FOR
JUDGMENT AS A MATTER OF LAW

June 27, 2014

STEARNS, D.J.

After consideration of the motion and the accompanying memorandum, as well as plaintiff's opposition, and having reviewed the testimony of Helen Collier, the court stands by its various rulings at the April 30, 2014 hearing. Consequently, the motion to reconsider the $90,000 award of back pay is DENIED.[1]

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE

_____

[1] The court also stands by its decision to eliminate the front pay award of $450,000 altogether and to order a remittitur of the $400,000 award of emotional distress damages to $50,000 (which plaintiff has accepted).

FSSADD18

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10175-RGS

JOSEPH TRAVERS

v.

FLIGHT SERVICES & SYSTEMS, INC.

MEMORANDUM AND ORDER ON
PLAINTIFF'S APPLICATION
FOR AN AWARD OF ATTORNEY'S FEES

August 14, 2014

STEARNS, D.J.

After a qualified success in pursuing a claim of retaliation to a verdict, plaintiff Joseph Travers now seeks the award of attorney's fees and costs that are mandated by the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 150. The amounts requested total $193,690 in fees and $8,568.52 in costs. While the parties rely heavily on federal law in their briefs, for *Erie* purposes, the issue of attorney's fees is substantive and not procedural in nature. *In re Volkswagen and Audi Warranty Extension Litig.*, 692 F.3d 4, 15 (1st Cir. 2012). Consequently, state-law principles govern the award.

The amount of a reasonable attorney's fee awarded by statutory authority "is largely discretionary with the judge." *Stowe v. Bologna*, 417 Mass. 199, 203

(1994), abrogated on other grounds by *Fabre v. Walton*, 441 Mass. 9, 10-11 (2004); *see also Fontaine v. Ebtec Corp.*, 415 Mass. 309, 324 (1993). "[T]]he focus [in awarding a fee] is not the bill submitted . . . or the amount in controversy, . . . but consideration of several factors including 'the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.'" *Berman v. Linnane,* 434 Mass. 301, 303 (2001), quoting *Linthicum v. Archambault*, 379 Mass. 381, 388-389 (1979). The court is not required to allow or disallow each item of a submitted bill, but may consider the bill as a whole. *Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 431 (2005) (stressing the obligation to submit precise details of the hours spent and the nature of the work performed). "[W]hen a fee request appears on its face dramatically disproportionate to the results the litigation produced . . . , the judge must focus with precision on the relationship between the time invested and the results achieved in order to insure that the 'time spent was [not] wholly disproportionate to the interests at stake.'" *Killeen v. Westban Hotel Venture LP.*, 69 Mass. App. Ct. 784, 796 (2007), quoting *Stratos v. Dep't of Pub. Welfare*, 387 Mass. 312, 323 (1982). Appropriate deductions include

duplication of effort, time spent by attorneys in correspondence with one another, overstaffing, "business" lunches, and excess hours in drafting simple motions. *Haddad v. Wal-Mart Stores, Inc.*, 455 Mass. 1024, 1027 (2010). The award of costs is also discretionary. *Berman*, 434 Mass. at 303.

Defendant Flight Services & Systems, Inc. (FSS) makes two arguments against any award, or at the least, a draconian reduction in the fee requested. The second ground, that the fee should be forfeited because of plaintiff Travers's alleged admission to underreporting his state and federal income tax liability (by understating the amount of tips that he received between 2007 and 2009) is the easier to reject. While Travers may have created future complications for himself with the Internal Revenue Service by testifying as he did, there is no authority that I am aware of (and none is cited) that would punish the lawyer for the tax defalcations of her client in a case that had nothing to do with tax issues, tax advice, or any misrepresentation of tax matters at trial. Defendant's second argument, that the fee should be reduced because of counsel's alleged lack of professionalism and misconduct at trial, has at first glance more heft. In this case, the alleged misconduct of counsel consisted of (1) ignoring the court's admonition to curtail a "missing witness" theme in closing argument, (2) attempting to elicit a hearsay statement from a witness without first establishing a basis for its admissibility, and (3) failing

3

to inform the court about the timing of a statement attributed to the President of FSS by a former supervisor who worked with Travers.

    To my mind, none of these alleged transgressions, while of varying degrees of seriousness, rose to the level of a sanctionable breach of professional ethics. The first and most serious of counsel's errors I attribute to the penchant for overzealous rhetoric that often overcomes even experienced counsel in the heat of a closing argument at trial. The risk of prejudice arose from counsel's insinuation that FSS had special access to a non-appearing witness, Michelle Saulnier (the customer who had complained about Travers' improper solicitation of a tip), and had chosen to suppress her testimony because "they [had] got the wrong skycap." Counsel was in fact well aware at the time that FSS had made diligent efforts to locate Ms. Saulnier. Moreover, counsel knew that there was nothing in the record to suggest that Ms. Saulnier had recanted her description of Travers or his behavior. Standing alone, this errant argument might have justified a mistrial (which FSS did not request). Notwithstanding, any ultimate risk of prejudice was allayed by the court's explanation (twice) to the jury that witnesses are equally available to both sides in a civil case, and by the court's ultimate rebuke to counsel in the jury's presence that "she shouldn't be doing this." The second error was simply a misunderstanding of the court's reason for sustaining the hearsay objection.

4

It was not because the proffered testimony was violative of Fed. R. Evid. 408(a), as FSS contended, but rather because counsel had failed to establish the authority under Fed. R. Evid. 810(d)(2)(D) of Lisa Variotis to make the statement attributed to her.[1] The third error, as the court stated at the hearing on the motion for remittitur/new trial, falls on the shoulder of the court (and not counsel) for not having been more attentive to the conflict in testimony over Robert Nichols' employment status at the time the alleged statement was made.[2]

Having disposed of these objections, I turn to the fee request itself, mindful of the factors identified by the Supreme Judicial Court in *Linthicum*. As plaintiff's counsel observes, FSS makes no particular objection to the number of hours expended on the case or the hourly rates charged by Ms. Liss-

---

[1] The settlement offer proffered by FSS – which was the subject of its Rule 408(a) objection – was not addressed to Variotis, nor was there any evidence that she ever saw it.

[2] The cases cited by FSS as justifying a fee reduction as a sanction for misconduct do not involve instances of statutory fee-shifting. In the case of *In re Goldstein*, 430 F.3d 106 (2d Cir. 2005), the court reduced the fee because of the attorney's egregious abuse of his client. The other examples offered, for instance, *Lee v. Am. Eagle Air, Inc.*, 93 F. Supp. 2d 1322 (S.D. Fla. 2000), and *Lawyer Disciplinary Bd. v. Hall*, 633 S.E.2d 241 (W. Va. 2006), involve blatant overbilling.

FSSADD23

Riordan ($600),[3] Ms. Tully ($250), and Mr. Cassavant ($300). While I have no doubt that Ms. Schwab is also worth the $450 hourly rate listed, her role in the case ("conduct[ing] some discovery and assist[ing] in overseeing discovery) is insufficiently explained to justify the 38.9 hours charged on her account. Consequently, I have reduced the fee award by $17,505. Otherwise, I find the number of hours expended and the tasks indicated to be very reasonable given a heavily litigated case that involved an appeal and culminated in a five-day jury trial.

With respect to costs, I agree with FSS that the $950.07 attributed to "multiple trial subpoenas" and the $220 allocated to "investigator expenses" are insufficiently documented to warrant reimbursement. Consequently, I have reduced the requested bill of costs by $1,170.07.

### ORDER

For the foregoing reasons, the court awards plaintiff attorneys' fees of $176,185 and costs of $7,398.45. The Clerk will amend the Judgment to reflect the award and close the district court case.

---

[3] While a $600 hourly rate might seem on the high side in light of the caution of *Smith v. Consalvo*, 37 Mass. App. Ct. 192, 196 (1994), that "[w]hen legal expenses are collected from a party other than the one who received the legal services a degree of conservatism in fee determination is in order," I am mindful of the fact that cases like this one are typically litigated on a contingency basis with no assurance that any fee at all will eventually be paid.

6

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

FSSADD25

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Joseph Travers,
          Plaintiff(s)

       v.                      CIVIL ACTION NO.   1:11cv10175 -  RGS

Flight Services & Systems, Inc.,
          Defendant(s)

## AMENDED JUDGMENT IN A CIVIL CASE

STEARNS, D.J.

    This action came before the court for a trial by jury.  The issues have been tried and the

jury has rendered its verdict.

    **IT IS  ORDERED AND ADJUDGED** that

    Judgment is hereby entered in favor of the Plaintiff, Joseph Travers. Damages are

awarded for back pay in the amount of $270,000 and for emotional distress in the amount of

$50,000. No damages are awarded for future pay.  The Court awards plaintiff attorneys' fees of

$176,185.00 and costs of $7,398.45.

                        SO ORDERED.

                         /s/Richard G. Stearns_____
                        RICHARD G. STEARNS
                        UNITED STATES DISTRICT JUDGE

                        ROBERT M. FARRELL,
                        CLERK OF COURT

Dated:  August 15,  2014_____        By     /s/ *Terri Seelye*_____
                                     Deputy Clerk